**Michael CARDO, Plaintiff,**

**v.**

**LAKELAND CENTRAL SCHOOL DISTRICT OF SHRUB OAK, NEW YORK, Lakeland Federation of Teachers Local 1760, and American Federation of Teachers AFL–CIO, Defendants.**

**No. 83 Civ. 4598 (JFK).**

United States District Court, S.D. New York.

June 15, 1984.

P. Edward Pirraglia, Pirraglia, Rosenblatt & McGarrity, White Plains, N.Y., for plaintiff.

Murray Steyer, Steyer & Sirota, White Plains, N.Y., for defendant Lakeland Cent. School Dist.

James R. Sandner, New York City, for defendant Lakeland Federation of Teachers; Janis Levart Barquist, New York City, of counsel.

## OPINION

KEENAN, District Judge:

Michael Cardo, the plaintiff in this action, was employed by the Lakeland Central School District of Shrub Oak (the "School District") located in Westchester County as a *per diem* substitute teacher, between the academic years of 1968–69 through 1981–82, except for the academic years 1970–71 and 1971–72. The Lakeland Federation of Teachers 1760 (the "Union") is and was during the time of plaintiff's employment by the School District the duly qualified exclusive representative for purposes of collective negotiations of regular teachers and permanent substitute teachers employed by the School District.

Plaintiff brought this action against the School District and the Union on June 20, 1983 alleging that he was denied contractual coverage for his collective bargaining rights by the collective bargaining agreement between the defendants which did not cover *per diem* substitute teachers, that this denial violated the equal protection clause of the United States Constitution and that, as a result of this denial, payment for his services was substantially less than the payment received by any other class of teacher with similar attainments. The complaint also alleges that defendants, in denying plaintiff contractual coverage for his collective bargaining rights and other rights in employment agreements, were acting under color of state law and, therefore, violated section 1983 of title 42 of the United States Code.

The School District has moved, pursuant to rule 56 of the Federal Rules of Civil Procedure, for summary judgment in its favor on the grounds that there is no merit in any of the causes of action against it asserted in the complaint and for costs, disbursements and attorneys' fees. The Union has moved, pursuant to rule 12(c), for an order and judgment dismissing the complaint on the grounds that it fails to state a cause of action against the Union, that the cause of action accrued beyond the statute of limitations, that the plaintiff failed to exhaust his administrative remedies and that the claims raised are not compensable under section 1983, and for its reasonable attorney's fees. Plaintiff opposes these motions and has moved, pursuant to rule 56, for summary judgment in his favor dismissing the answers filed on behalf of the defendants and a declaration that plaintiff's rights under the equal protection clause of the United States Constitution were violated by the fact that the plaintiff, as a *per diem* substitute teacher, was not covered by the collective bargaining agreement between the defendants.

FACTS

Throughout his fourteen years of teaching in the School District, plaintiff never taught in any capacity other than that of a *per diem* substitute. He never attained the status of regular teacher or permanent substitute teacher. During those fourteen years, he taught an aggregate of 147.5 days, an average of 10.5 days per year. For 67.5 of those days plaintiff taught subjects in which he was not certified.[1]

As a *per diem* substitute teacher, the plaintiff was not paid the same rate of salary as regular and permanent substitute teachers, but was paid at the rate established for *per diem* substitute teachers by the School District. The plaintiff also was not represented by the Union. In fact, during most of plaintiff's employment, the Union was not only not certified to represent *per diem* substitute teachers, but had

no legal basis for doing so. Not until July 27, 1981 were *per diem* substitute teachers granted the right to organize, N.Y.Civ. Serv.L. § 201(7)(d) (McKinney's 1981), and then only if they receive a reasonable assurance of continuing employment sufficient to disqualify them from receiving unemployment insurance benefits.

Plaintiff never protested these facts until October 19, 1982 when he presented a written notice of claim to the School District, some months after he had finished his last academic year of teaching. This action was filed on July 28, 1983.

*Equal Protection Claim*

The essence of plaintiff's claim is that as a *per diem* substitute school teacher his training, qualifications and responsibilities were similar to those of regular teachers and permanent substitute teachers and, thus, that he should not have been treated differently than those teachers by being excluded from the collective bargaining agreement. The defendant has submitted evidence and affidavits indicating that the qualifications for and responsibilities of a *per diem* substitute are substantially different from those of a regular teacher or permanent substitute. Plaintiff argues that the qualifications and responsibilities are the same because the regulations of the Commissioner of Education define a *per diem* substitute teacher as one who is employed in place of a regular teacher who is absent but is expected to return. 8 N.Y. Code Rules & Regulations, pt. 80.36. The Court need not resolve this issue of whether the positions are the same or different for the purposes of ruling on this motion.

■ Courts should not overturn legislated distinctions between different groups on the grounds that they deny equal protection of the laws unless the varying treatment that results is so unrelated to the achievement of any legitimate purposes that the distinction is irrational. *Exxon Corporation v. Eagerton*, 462 U.S. 176, 103 S.Ct. 2296, 2308, 76 L.Ed.2d 497 (1983);

---

**1.** Unlike regular or permanent substitute teachers, *per diem* substitutes can be employed in a subject area for which they are not certified.

This is provided for by the Regulations of the Commissioner of Education. 8 N.Y.Code Rules & Regulations, pt. 80.

*United States Railroad Retirement Board v. Fritz*, 449 U.S. 166, 175, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980); *Vance v. Bradley*, 440 U.S. 93, 97–98, 99 S.Ct. 939, 942–943, 59 L.Ed.2d 171 (1979). Thus exclusion of *per diem* substitute teachers from collective bargaining violates equal protection only if the exclusion is not rationally related to furthering a legitimate state interest. *See Western & Southern Life Insurance Company v. State Board of Equalization*, 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514 (1981); *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976).

■ At the time of plaintiff's employment by the School District the Public Employment Relations Board of the State of New York [2] had determined that *per diem* substitute teachers lacked the continuing employment relationship with their school districts required for classification as a public employee under the Taylor Act. *Board of Education of the City of Buffalo*, 14 Pub.Empl.Rel.Bd. ¶ 4005 (1981); *In the Matter of Donoghue, Esq., to review a determination relating to the city school district*, 6 Pub.Empl.Rel.Bd. ¶ 3083 (1973). Prior to the enactment of the Taylor Act, the state and its subdivisions were considered sovereign powers, not obligated to bargain collectively with their employees. The Taylor Act granted public employees the right to negotiate collectively with their employers concerning the terms and conditions of their employment. N.Y.Civ. Serv.L. § 203 (McKinney's 1983).

It is not the role of this Court to evaluate the determination of the Public Employees Relations Board that *per diem* substitute teachers were not protected by the provisions of the Taylor Act because they lacked a regular and substantial employment nexus with their school boards. *Cf. Mathews v. Diaz*, 426 U.S. 67, 83–84, 96 S.Ct. 1883, 1893–1894, 48 L.Ed.2d 478 (1976) (court declined to substitute its judgment for that of

Congress). As the Supreme Court stated, in *Dandridge v. Williams*, 397 U.S. 471, 486, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970), "the Fourteenth Amendment gives the federal courts no power to impose upon the states their views of what constitutes wise or economic social policy." The only question for this Court to determine is whether the distinction is patently arbitrary or irrational. *See United States Retirement Board, supra*, 449 U.S. at 178, 101 S.Ct. at 461.

The differing treatment of *per diem* substitute teachers and regular and permanent substitute teachers was not arbitrary. The certification requirements for these positions are different, *see Op. Comm'r Educ. Dept.*, 18 Educ.Dept.Rep. 155 (1979), as is the continuity of the relationship with the school board. *In the Matter of East Ramapo Central School District*, 6 Pub. Empl.Rel.Bd. ¶ 4033, at 4062 (1973). Distinctions based on these differences are rational. Even under the recent amendments to the Taylor Law, *per diem* substitute teachers have the right to organize only if they have received reasonable assurances of continued employment from their school boards. N.Y.Civ.Serv.L. § 201(7)(d) (McKinney's 1983). Where, as here, there are plausible reasons for a legislative determination, the Court's inquiry is at an end.

■ It is irrelevant whether the plausible reasons in fact underlie the legislative decision. A legislative body is not required to articulate its reasons for enacting a statute. *See United States Retirement Board, supra* 449 U.S. at 180, 101 S.Ct. at 462 (Stevens, J., concurring). It is sufficient if the legislature could have concluded that the challenged classification would promote a legitimate state purpose. *Exxon Corporation, supra*, 103 S.Ct. at 2308. In this case, the state may have had the legitimate purpose of not wanting to burden local school boards with the obligation to negotiate employment conditions with a

---

**2.** The Public Employees Relations Board has the authority to determine questions concerning the scope and appropriateness of particular bar-

gaining units that public employers are required to negotiate with. N.Y.Civ.Serv.L. § 205(5)(b) (McKinney's 1983).

class of teachers with whom they did not have a substantial and continuing employment relationship.[3]

The plaintiff argues, however, that application of the "rational basis" test is inappropriate in this case because the classification burdens his constitutional right to be protected by the provisions of a collective bargaining agreement and is a suspect classification. Indeed, a state must demonstrate a compelling interest in a classification if the classification burdens a fundamental right, *Regan v. Taxation with Representation of Washington*, 461 U.S. 540, 103 S.Ct. 1997, 2002, 76 L.Ed.2d 129 (1983); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968), or is a "suspect" classification. *Exxon Corporation, supra*, 103 S.Ct. at 2308; *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). No such right has been burdened or classification made in this action, however.

■ The rights allegedly burdened in this action are the right to bargain collectively and the right to be protected by and receive the benefits of a collective bargaining agreement. These rights, when they exist, are statutorily created. They are not fundamental rights such as first amendment rights, which are explicitly provided for by the Constitution, *see, e.g., Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 284–85, 97 S.Ct. 568, 574–575, 50 L.Ed.2d 471 (1977); *Perry v. Sindermann*, 408 U.S. 593, 598, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972); the right to travel interstate, which has been found to be implicit in the Constitution, *see, e.g., Martinez v. Bynum*, 461 U.S. 321, 103 S.Ct. 1838, 1842–43, 75 L.Ed.2d 879 (1983); *Shapiro, supra*, 394 U.S. at 629–31, 89 S.Ct. at 1328–1329; and the right to vote, which is the guardian of all other rights. *Harper v. Virginia Board of Elections*, 383 U.S. 663, 667, 86 S.Ct. 1079, 1081, 16 L.Ed.2d 169 (1966).

■ The key to discovering whether a right is fundamental is in assessing whether the right is explicitly or implicitly guaranteed by the Constitution. *San Antonio School District v. Rodriguez*, 411 U.S. 1, 34, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973). The right to collectively bargain and to receive the benefits of collective bargaining are not among the rights afforded explicit protection under our federal constitution. Nor is there any basis for finding that they are implicitly so protected or necessary to protect all other rights.

■ At best, the right to collectively bargain and the right to receive the benefits of a collective bargaining agreement are statutorily created property rights. Even their status as property rights is questionable. Although property interests in employment can be created by ordinance or contract, the sufficiency of a claim of entitlement to those rights must be determined by reference to state law. *Bishop v. Wood*, 426 U.S. 341, 349, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Under New York law, plaintiff was not entitled to these rights. As stated above, *per diem* substitute teachers did not have the right under the Taylor Act to bargain collectively with their employers at the time in question. Plaintiff, therefore, did not have a property interest to be protected in collective bargaining or in the potential benefits of collective bargaining.

■ Plaintiff also alleges that his right to earn a living in his chosen profession was impaired because he did not receive the potential wage benefits of collective bargaining. "To have a property interest in a benefit," however, "a person clearly must have more than an abstract need or desire for it ... He must, instead, have a legitimate claim of entitlement to it." *Board of Regents, supra* 408 U.S. at 577, 92 S.Ct. at 2709. Even full time untenured employees do not have a constitutionally

---

**3.** It should be noted that unlike permanent and regular substitute teachers, *per diem* substitute teachers are not precluded by the Taylor Act from refusing to work on any given day because they object to the terms and conditions of their employment.

protected property interest in their continued employment. *E.g., Mt. Healthy City Board of Education, supra,* 429 U.S. at 274, 97 S.Ct. at 568; *Bishop, supra,* 426 U.S. at 349, 96 S.Ct. at 2079; *Arnett v. Kennedy,* 416 U.S. 134, 154, 94 S.Ct. 1633, 1644, 40 L.Ed.2d 15 (1974). They certainly do not have an interest in receiving better wage benefits. Similarly, plaintiff's claim that as a *per diem* substitute teacher he would have received higher wages if he had union representation was a mere expectation and not a property interest. Even assuming that the plaintiff had a property interest in the benefits of collective bargaining, the classification affecting that interest need only be rationally related to a legitimate state purpose. Classifications that affect property interests are not subject to strict scrutiny under the equal protection clause.[4] It is not the province of the Court to elevate such rights to the status of substantive constitutional rights, which can only be infringed by compelling state interests, in the name of guaranteeing equal protection of the laws. *San Antonio Independent School District, supra,* 411 U.S. at 34, 93 S.Ct. at 1297.

■ The classification of *per diem* substitute teachers also is not deserving of strict scrutiny because it does not disadvantage a "suspect class." Certain classifications have been treated as presumptively invidious, or "suspect", because they are more likely than others to reflect deep seated prejudice, rather than legislative rationality in the pursuit of some legitimate objective. *Plyer v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 2394 n. 14, 72 L.Ed.2d 786 (1982). Such classifications, tend to be irrelevant to any proper legislative goal, *see McLaughlin v. Florida,* 379 U.S. 184, 192, 85 S.Ct. 283, 288, 13 L.Ed.2d 222 (1964), and affect groups that historically have been "relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian po-

litical process." *San Antonio School District, supra,* 411 U.S. at 29, 93 S.Ct. at 1294. No such claim can be made regarding *per diem* substitute teachers. Although compensation of these teachers has admittedly become increasingly disproportionate to the compensation of permanent and regular substitute teachers during the past ten years, there is no basis for finding that this is the result of deep seated prejudice or attributable to political powerlessness.

A classification based on an employment relationship is clearly distinguishable from a classification based on race, national origin or alienage. It is these latter classifications that the courts have found suspect and have subjected to strict scrutiny under the equal protection clause. *Frontiero v. Richardson,* 411 U.S. 677, 689, 93 S.Ct. 1764, 1771, 36 L.Ed.2d 583 (1973); *see, e.g., In re Griffiths,* 413 U.S. 717, 93 S.Ct. 2851, 37 L.Ed.2d 910 (1973) (rule requiring that members of the bar be citizens); *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (law conditioning welfare benefits on citizenship); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (law banning interracial marriage); *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (law providing for racially segregated schools); *Yick Wo, supra,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed.2d 220 (law, as applied, resulted in denial of laundry license to Chinese applicants).

■ The distinction between *per diem* and regular and permanent substitute teachers should be evaluated under the rational relationship test. This test is applicable when, as here, socioeconomic or economic legislation is challenged for treating similar situations differently. *See City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). As was established above, the distinction meets the

---

**4.** Property interests are protected by the procedural requirements of the due process clause. Thus if a property interest is found to exist on behalf of a person, it cannot be denied without due process of law. This requirement, however, does not affect the substantive legislative determination of whether the right exists at all or can be burdened to achieve legitimate state interests.

requirements of this test. Plaintiff's equal protection claim, therefore, is legally insufficient.

*Section 1983 Claim*

■ Plaintiff also urges that he is entitled to relief under section 1983 of title 42 of the United States Code, which creates a right of action on behalf of anyone who under color of state law has been deprived of any rights "secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. A claim upon which relief can be granted under section 1983 must contain two elements. Plaintiff first must show that he has been deprived of a right secured by the Constitution or federal law. Secondly, plaintiff must show that defendants deprived him of this right while "acting under color" of a state statute. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978).

Plaintiff claims that the Union and the School District acted under color of state law when they did not include *per diem* substitute teachers in the collective bargaining agreement and that, as a result, "his right to earn a living in his chosen occupation has been conditioned on his reluctant acceptance of the deprivation of the right to the fruits of his labors and to the protections deemed important to the practice of his profession." The protections that plaintiff has been denied are the protections of collective bargaining. Any rights to these protections are based on statute. As was stated above, no such statutory rights existed for *per diem* substitute teachers in the New York public school system at the time of plaintiff's employment. Furthermore, plaintiff has failed to allege facts which indicate a constitutional or federal statutory source for the rights of which he claims to have been deprived. Because plaintiff has failed to allege facts satisfying the first element of proof required for relief under section 1983, the Court need not determine whether the alleged deprivation was effected under color of state law. Plaintiff has not met the statutory requirements of section 1983, and thus has failed to allege a right to relief under that statute.

*Notice of Claim Requirement*

The School Board also argues that plaintiff's motion should be denied and its motion for summary judgment granted because plaintiff did not file a timely notice of claim with the School Board. New York law states that an action involving the rights and interests of a school district cannot be brought unless a written notice of the claim upon which the action is based has been presented to the governing body of the school district within three months of the accrual of the claim. N.Y.Educ.L. § 3813 (McKinney's 1981). The School Board did not receive a notice of claim from the plaintiff until October 19, 1982, five months after the final day of the last school year in which the plaintiff taught for the district.

■ Plaintiff argues that this notice of claim requirement is not applicable to civil rights cases brought under title 42, section 1983. In determining questions concerning the application of a state limitation period to a federal civil rights action, considerations of state law may be displaced where their application would be inconsistent with the federal policy underlying the cause of action. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 466, 95 S.Ct. 1716, 1723, 44 L.Ed.2d 295 (1975). A state statute is not inconsistent with federal law, however, merely because the statute causes a particular plaintiff to lose his litigation. *Board of Regents v. Tomanio*, 446 U.S. 478, 489, 100 S.Ct. 1790, 1797, 64 L.Ed.2d 440 (1980); *Robertson v. Wegmann*, 436 U.S. 584, 593, 98 S.Ct. 1991, 1996, 56 L.Ed.2d 554 (1978). Only if the state law is inconsistent with the policies underlying the federal cause of action, *see Occidental Life Insurance Company v. EEOC*, 432 U.S. 355, 368, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977), or would interfere with a federal goal of achieving uniformity, *see Carlson v. Green*, 446 U.S. 14, 25, 100 S.Ct. 1468, 1475, 64 L.Ed.2d 15 (1980), is the state law displaced. 42 U.S.C. § 1988.

■ The two principal policies embodied in section 1983 are deterrence and compensation. *Board of Regents, supra,* 446 U.S. at 489, 100 S.Ct. at 1797. Neither of these policies is significantly affected by the notice of claim requirement, since plaintiffs can readily enforce their claims, thereby recovering compensation and fostering deterrence, simply by filing a timely notice of claim. There is no reason, therefore, to displace the New York notice of claim requirement in this action. Furthermore, this requirement serves an important state interest. The notice requirement allows a governmental subdivision a meaningful opportunity to investigate in a timely manner the circumstances that gave rise to the claim and protects them against fraudulent and stale claims. *Mills v. County of Monroe,* 59 N.Y.2d 307, 311, 464 N.Y.S.2d 709, 451 N.E.2d 456 (1983). Because plaintiff's notice of claim to the School Board was untimely under New York law, the action against the board is untimely.

*Statute of Limitations*

The School District and the Union also argue that the statute of limitations has run on plaintiff's claims against them. Section 1983 contains no statute of limitations. When Congress has not established a statute of limitations for a federal cause of action courts "borrow" the state limitations period governing an analogous cause of action. *See Johnson, supra,* 421 U.S. at 462, 95 S.Ct. at 1721. This Court, therefore, must look to the most analogous state cause of action and apply the New York statute of limitations applicable to that cause of action to this claim.

■ The School District contends that the four month limitations period for proceedings against a body or officer for failure to perform a duty which the law requires him to perform, N.Y.Civ.Prac.L. § 217 (McKinney's 1972), provided for by article 78 of the Civil Practice Law, *see* N.Y.Civ.Prac.L. § 7803 (McKinney's 1981), should be applied to this action. These article 78 proceedings are generally the proper vehicle to determine whether a stat-

ute or regulation has been applied correctly. However, they are not the proper vehicle to test the constitutionality of a legislative enactment. *Application of Covenant Community Church,* 111 Misc.2d 537, 444 N.Y.S.2d 415 (1981). This action challenges the School Board's adherance to the administrative determination of the Public Employees Relations Board and its failure to protect the alleged rights of *per diem* substitute teachers. It does not challenge the determination of the Public Employees Relations Board directly. The action alleged against the School Board, therefore, is more analogous to an "action to recover upon a liability, penalty or forfeiture imposed or created by statute," to which a three year statute of limitations applies. N.Y.Civ.Prac.L. § 214(2) (McKinney's Supp. 1979–80). As the plaintiff last taught during the 1981–1982 academic year, the statute has not run as to the School Board as to the entire claim. This does not make the action timely, however, as plaintiff failed to file a timely notice of claim with the School Board.

■ The Union contends that the cause of action most analogous to plaintiff's claim against it is that for breach of a union's duty of fair representation. A four month statute of limitations applies to these actions. N.Y.Civ.Serv.L. § 200 et seq. (McKinney's 1972); Public Employment Relations Board, Rules of Procedure § 204.1(a). The Court need not determine, however, whether the claim brought by plaintiff against the union is more analogous to a claim for breach of the duty of fair representation than to an action governed by section 214(2). In either case, the statute has run. The last collective bargaining agreement that governed relations between the school district and permanent and regular substitute teachers during the time that plaintiff was teaching was executed in 1979. It was that contract which excluded plaintiff and caused his alleged injuries. Therefore, his cause of action for redress of those injuries accrued in 1979, over three years before he filed this action. Plaintiff's claim against the Union, there-

fore, is barred by the statute of limitations even when the longer limitation period is applied.

For the reasons stated above, plaintiff's motion for summary judgment is denied. The motion of the School Board for an order dismissing the complaint against it is granted. The motion of the Union for judgment on the pleadings in its favor is also granted. No costs or fees shall be awarded in connection with these motions. Judgment is entered in favor of the defendants.

SO ORDERED.