■ STANLEY GIANNELLI, JR., Respondent-Appellant, v ST. VINCENT'S HOSPITAL AND MEDICAL CENTER OF NEW YORK et al., Appellants, and ANTHONY J. ACINAPURA, Appellant-Respondent, et al., Defendants.—Order of the Supreme Court, New York County (Ethel Danzig, J.), entered May 10, 1989, inter alia, denying a motion by defendant Anthony J. Acinapura (CPLR 3211 [a] [7]; 3212) to the extent that it sought dismissal of plaintiff's first cause of action for breach of contract and dismissal of plaintiff's third cause of action for intentional interference with contractual relations; granting such motion to the extent that it sought dismissal of portions of plaintiff's first cause of action for defamation and prima facie tort; and granting the motion of defendants St. Vincent's Hospital et al. (CPLR 3211 [a]) dismissing the complaint against defendants McQuade, Brooks and Hicks and otherwise denying such motion, without prejudice, unanimously modified, on the law, to the extent of dismissing in their entirety the first and third causes of action against Anthony J. Acinapura, and otherwise affirmed, without costs.

This action arises from the April 1, 1986 suspension of plaintiff's privileges to perform cardiovascular surgery at St.

Vincent's Hospital and Medical Center (St. Vincent's or the hospital). St. Vincent's maintains that the decision to suspend plaintiff's privileges was due to the high mortality rate of plaintiff's cardiac surgery patients and to plaintiff's unsatisfactory surgical performance. Plaintiff claims, however, that the suspension was in retaliation for his unabated criticism of the operations of the hospital's cardiac unit and of the administrator of that unit, defendant Dr. Anthony Acinapura. Plaintiff claims that defendants conspired to suspend his privileges, defamed him and effectively destroyed his medical practice.

Plaintiff, Dr. Stanley Giannelli, Jr., is a licensed physician specializing in cardiac surgery, who was chief of thoracic and cardiovascular surgery at St. Vincent's from 1963 until 1978. Thereafter, plaintiff continued to be a member of the hospital's medical staff and continued his privileges to perform cardiac surgery at St. Vincent's.

In 1985 the New York State Cardiac Surgical Advisory Committee, established by the State Commissioner of Health, evaluated the cardiac surgery unit at St. Vincent's and determined the unit's mortality figures exceeded the Committee's guidelines. As a result defendant Thomas Nealon, Jr. (Dr. Nealon), director of the department of surgery at St. Vincent's, ordered that, commencing July 1, 1985, cumulative mortality rate reports be prepared. Upon review of one such quarterly report in January of 1986, Dr. Nealon found that the mortality rates for the patients of plaintiff and of one other doctor were unacceptably high. Dr. Nealon therefore ordered that Dr. Acinapura, who had succeeded plaintiff in 1978 as chief of the thoracic and cardiovascular surgery unit, carefully monitor the surgical performances of plaintiff and of the other surgeon.

Thereafter, Dr. Nealon received reports from Dr. Acinapura and from other physicians concerning plaintiff's performance during two specific cardiac surgical procedures, reviewed the patients' records and discussed the surgery with plaintiff. Then, by letter dated April 2, 1986, Dr. Nealon advised plaintiff that effective April 1, 1986 plaintiff's privileges to operate on coronary arteries and on heart valves at the hospital were suspended upon the recommendation of Dr. Acinapura, with which recommendation he (Nealon) concurred. The letter further stated that this action was being taken in the interest of patient welfare and safety. Plaintiff's ability to perform other surgery for which he was qualified and his other privileges as a member of the medical staff were not affected.

The hospital's credentials committee reviewed the matter on April 11, 1986 and did not approve the suspension. When Nealon refused to reinstate plaintiff, the matter was referred to the executive committee of the medical staff before which plaintiff, Nealon and Acinapura made statements. By letter of April 29, 1986, the executive committee sustained the suspension.

Plaintiff then requested an intrahospital hearing pursuant to article I, section H of the hospital's medical staff bylaws. Following a hearing, the members of the hearing committee, defendants Dr. Enrique Bonfils-Roberts, Dr. James Dooley, Dr. Robert McGrath and two other members of the medical staff voted to confirm the suspension. A judicial review committee, comprised of defendants Dr. Jesse Blumenthal, Dr. Robert Braff, Dr. Sverrir Georgsson (Georgsson), Bernard Brooks (Brooks), George Doty and Bernard Ruggieri, was convened and conducted a further hearing. This committee also confirmed the suspension. Thereafter, the board of trustees of the hospital adopted the recommendation of the judicial review committee.

By verified complaint of July 6, 1987, plaintiff commenced this action for compensatory and punitive damages against St. Vincent's, and against administrators and staff members who participated in the decision to terminate his cardiac surgery privileges or in the intrahospital appeal procedure which followed. Plaintiff alleged that since 90% of the surgery conducted by him involved coronary arteries and heart valves, the suspension effectively brought his practice to a standstill and severely damaged his career and reputation as a leading cardiac surgeon in New York City.

The first cause of action of the complaint charges all defendants with breach of contract in depriving plaintiff of his surgical privileges in violation of procedures set forth in the hospital bylaws, prima facie tort in that in retaliation for his criticisms of cardiac surgical services and of Acinapura, the defendants conspired to deprive him of·privileges, and that defendants Nealon, Acinapura, Lambert King (vice-president of professional affairs [King]), Margaret Sweeney (president of the hospital [Sweeney]), Theodore Druhot (executive vice-president of the hospital [Druhot]), and Robert Hicks (director of anesthesiology [Hicks]), in pursuance of this conspiracy defamed him. Under the first cause plaintiff seeks lost income of $637,499, lost future income of $11,358,854, the value of his medical practice, $2,500,000, and legal fees of $45,556.

The second cause of action charges that defendants Nealon, King and Acinapura defamed and libeled plaintiff, causing damage to his reputation. Specifically, plaintiff alleges that on March 18 and April 1, 1986 Acinapura wrote to Nealon making false statements and questioning the continuation of plaintiff's privileges and that before the executive hearing committee and judicial review committee Nealon, Acinapura and King charged that plaintiff had abandoned a patient and made other statements suggesting that plaintiff was incompetent.

The third cause of action is against defendant Acinapura. It alleges that Acinapura is a competitor and that his conduct constitutes unfair trade practices, unfair competition and illegal restraint of trade.

In lieu of answering the complaint, all of the defendants except Acinapura (hereinafter referred to as the hospital defendants) moved by notice of motion dated September 8, 1987 to dismiss the complaint (CPLR 3211) on the following grounds: plaintiff failed to exhaust administrative remedies (Public Health Law § 2801-b); release (pursuant to the medical staff bylaws); statutory immunity (Public Health Law § 2805-j; Education Law § 6527); common-law qualified immunity (communications between persons having similar duties made in the course of official duty); lack of personal jurisdiction over defendants Sweeney, Druhot, Hicks and Georgsson; the Statute of Limitations had run as to defendants Nealon, Hicks and Brooks (CPLR 203 [b]; 215 [3]); failure to state a cause of action for prima facie tort; and, as a matter of law, the complaint lacked merit.

By notice of motion dated September 10, 1987, defendant Acinapura filed an answer and moved to dismiss the complaint for failure to state a cause of action (CPLR 3211 [a] [7]) and for summary judgment (CPLR 3212).

The IAS court jointly decided the two motions. With respect to the hospital defendants' motion the court: (1) dismissed the complaint for lack of personal jurisdiction as to McQuade—the plaintiff having conceded that McQuade was not personally served—and otherwise granted leave to renew upon more complete papers; (2) denied the motion to dismiss for failure to exhaust administrative remedies, finding that Public Health Law § 2801-b, which provides for filing a complaint with and investigation by the Public Health Council, does not impair a remedy for breach of contract and defamation, which remedies exist under common law and without reference to the proce-

dure set forth in that statute (§ 2801-b [4]; *see, Guibor v Manhattan Eye, Ear & Throat Hosp.,* 46 NY2d 736, 737 [1978]); (3) denied the motion for dismissal on the grounds of statutory immunity since both Education Law § 6527 and Public Health Law § 2805-j (2) exempt from immunity communications made in the absence of good faith and with malice; (4) denied the claim of common-law privilege *(see, Licitra v Faraldo,* 130 AD2d 555 [2d Dept 1987]) also because such privilege is destroyed by malice and plaintiff has sufficiently alleged malice; (5) denied those branches of the motion to dismiss on the basis of release and contractual immunity created under the hospital bylaws, since the bylaws conditioned both upon the absence of malice; (6) denied dismissal for failure to state a cause of action because the court found that plaintiff's first cause of action alleges claims for breach of contract, for prima facie tort, and for defamation; and (7) denied dismissal based upon the running of the Statute of Limitations, except as to defendants Brooks and Hicks, since plaintiff conceded that service was untimely as to them (CPLR 3211 [a] [5]; 215 [3]).

As to the motion by defendant Acinapura, the IAS court: (1) denied summary judgment on the breach of contract claim under the first cause of action, finding that there were triable issues of fact concerning the extent to which procedures mandated by the bylaws had been followed; (2) granted summary judgment on the defamation and prima facie tort claims under the first cause of action and on the defamation claim under the second cause of action, finding that plaintiff had offered only conclusory allegations as to Acinapura's malice; (3) denied summary judgment dismissal of the third cause of action alleging intentional interference with contractual relations; and (4) denied as moot the motion to dismiss the first and second causes for failure to sufficiently plead defamation and prima facie tort.

We modify the IAS court's order by granting summary judgment to the defendant Acinapura on plaintiff's breach of contract claim under the first cause of action and on the interference with contractual relations claim under the third cause.

A cause of action is sufficiently stated so as to defeat a motion pursuant to CPLR 3211 (a) (7) if upon any reasonable view of the facts alleged in the complaint, plaintiff would be entitled to recover. *(219 Broadway Corp. v Alexander's, Inc.,* 46 NY2d 506, 509 [1979].) Plaintiff alleged facts sufficient to state each cause of action against the hospital defendants.

The IAS court did not abuse its discretion in not converting the hospital defendants' motion to dismiss (CPLR 3211 [a], [c]) into one for summary judgment (CPLR 3212), especially since it denied dismissal without prejudice to the filing of a motion for summary judgment after joinder of issue.

However, the denial of Acinapura's motion for summary judgment on the breach of contract and tortious interference causes was error.

With respect to these claims, it is first noted that immunity from liability provided by Education Law § 6527 (5) and Public Health Law § 2805-j (2) would not preclude a claim against Acinapura for breach of contract or for interference with contractual relations were evidence of malicious intent presented. Both statutes exclude from their ambit communications made in the absence of good faith and with malice.

We also conclude that the medical staff bylaws may form the basis of a claim for breach of contract or intentional interference with contractual relations. *(Cf., Matter of Murphy v St. Agnes Hosp.,* 107 AD2d 685, 687 [2d Dept 1985]; *Chalasani v Neuman,* 97 AD2d 806 [2d Dept 1983], *revd on other grounds* 64 NY2d 879 [1985], citing *Tedeschi v Wagner Coll.,* 49 NY2d 652, 662 [1980].)*

However, here there is no evidence of a contractual relationship between plaintiff and Acinapura individually, and Acinapura may not be held liable for breaches committed by his principal. *(See, Bethlehem Steel Corp. v Solow,* 51 NY2d 870, 872-873 [1980].)* In denying summary judgment to Acinapura on the breach of contract claim, the IAS court found that there were issues of fact raised concerning the extent to which the procedures mandated by the hospital's medical staff bylaws had been followed. The IAS court erred in not distinguishing the role of Acinapura, essentially a witness in the proceedings, from those of the other defendants who might have been responsible for compliance with the procedural requirements of the bylaws. Moreover, plaintiff concedes that there "is no evidence that Acinapura himself violated the By-Laws". Thus, summary judgment should have been granted to Acinapura on the breach of contract claim.

An action for intentional interference with contractual relations requires proof of the existence of a valid contract between plaintiff and a third party, the defendant's knowledge of that contract, the defendant's intentional procurement of a breach of that contract by the third party without justification, an actual breach of the contract and damages caused by

the breach. *(Kaminski v United Parcel Serv.,* 120 AD2d 409, 412 [1st Dept 1986], citing *Israel v Wood Dolson Co.,* 1 NY2d 116, 120 [1956].)

In opposition to summary judgment plaintiff offers a chronology of incidents, commencing in 1981, of complaints and of criticisms leveled by him against Dr. Acinapura, in an effort to establish Acinapura's motive to retaliate. Plaintiff further alleges that discrepancies exist in Acinapura's testimony and asserts that he and Acinapura are competitors.

However, plaintiff has produced no evidence that Acinapura intentionally interfered with or induced the breach of his contract. *(See, Novak v Rubin,* 129 AD2d 780, 782 [2d Dept 1987], *rearg granted and lv denied* 133 AD2d 223 [1987].) The breach of contract alleged here is that the hospital violated the procedural provisions of its bylaws. Acinapura was a witness in the in-house review proceedings. Plaintiff offers no evidence that he voted, made any rulings or otherwise intentionally caused the hospital and others to violate prescribed bylaw procedures. Moreover, plaintiff has not presented evidence that Dr. Acinapura's recommendation and testimony were motivated by malice or by other than a concern for patient welfare or institutional goals. In fact plaintiff failed to challenge, other than by assertions contained in his own affidavit, Acinapura's reasons for recommending suspension of his privileges. Plaintiff's affidavit refers to a favorable independent evaluation of his surgical performance during the relevant period. He maintains that the evaluator was the director of a university cardiac surgical program and also served as a member of the New York State Department of Health team which reviewed the cardiac surgical program at St. Vincent's one year earlier. However, he fails to provide an affidavit or report by this independent evaluator. In addition, plaintiff does not identify specific patients or business accruing to Acinapura as a result of his suspension which might support his claim. The absence of evidence of malice is even more critical since Acinapura's responsibility as chief of thoracic and cardiovascular surgery required that he express his honest although critical opinion of plaintiff's performance. *(See, Leibowitz v Szoverffy,* 80 AD2d 692 [3d Dept 1981].)

In order to defeat the motion for summary judgment, plaintiff was required to produce admissible proof that would require a trial of the material questions of fact upon which his claim rests. *(Ferber v Sterndent Corp.,* 51 NY2d 782 [1980].) This he has failed to do. Concur—Ross, J. P., Asch, Milonas, Kassal and Smith, JJ.