**Joanne E. FINLEY, M.D., Plaintiff,**

v.

**George T. GIACOBBE, Individually and as Commissioner, Department of Hospitals, Rockland County, New York, John T. Grant, Individually and as Rockland County Executive, Rockland County Department of Hospitals, Summit Park Hospital/Rockland County Infirmary, and County of Rockland, Defendants.**

**No. 93 Civ. 1464 (GLG).**

United States District Court, S.D. New York.

July 19, 1993.

---

**6.** The Court issued a 26 page Memorandum Opinion and Order, dated April 21, 1992, with respect to Marquez's pretrial motions.

## OPINION

GOETTEL, District Judge.

Plaintiff Dr. Joanne E. Finley brings this action against George T. Giacobbe, Commissioner of Hospitals for Rockland County, John T. Grant, Rockland County Executive, Rockland County Department of Hospitals ("the Department of Hospitals"), Summit Park Hospital/Rockland County Infirmary ("SPH/RCI") and the County of Rockland ("the County"). Plaintiff alleges that she was forced to resign her position as the Medical Director of SPH/RCI because of her efforts to provide health care services for patients with acquired immune deficiency syndrome ("AIDS"). She claims that her forced resignation violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and other federal and state anti-discrimination laws. Plaintiff also alleges that defendants breached her employment contract and tortiously interfered with her contract rights.

## FACTS

■ On a motion to dismiss, we must take all factual allegations in the complaint as true. *LaBounty v. Adler*, 933 F.2d 121 (2d Cir.1991). Therefore, we set forth the facts as alleged in the complaint.

In November of 1991, Giacobbe offered Finley the position of Director of Medical Services for the Department of Hospitals Plaintiff accepted the offer effective December 3, 1991 and was also given the title of chief medical officer of SPH/RCI.

According to the complaint, one of the issues confronting the Department of Hospitals and SPH/RCI was the growing number of AIDS patients in Rockland County. When Finley began working for the County, neither SPH nor RCI had ever admitted a patient with fully developed AIDS.

In February 1992, Finley began receiving requests from community hospitals and physicians that patients with AIDS in need of long term hospital care be admitted to SPH or RCI. Finley denied the first three requests she received because she found that SPH was not able to meet the patients' medical needs. However, Finley decided to admit the fourth patient after determining that

Vladeck, Waldman, Elias & Engelhard, P.C., New York City by Judith P. Vladeck, Debra L. Raskin, Lucinda M. Finley, SUNY at Buffalo Law School, Buffalo, NY, Joseph E. Finley, Baltimore, MD, for plaintiff.

Patterson, Belknap, Webb & Tyler, New York City, for defendant.

SPH could safely and effectively meet the patient's medical needs and that the medication required by the patient, who was eligible for Medicaid, would not cause SPH to incur excessive costs.

Despite an implied warning from an employee of the Department of Hospitals that county hospitals would not admit AIDS patients, Finley admitted this fourth patient to SPH in late March 1992 and so informed Giacobbe by memorandum dated March 20, 1992.

Plaintiff claims that Giacobbe attempted to delay the patient's admission by proposing a planning committee to study the establishment of a discrete AIDS unit at a staff meeting. At the same meeting, Giacobbe reacted angrily when Finley suggested that the County Department of Health should be involved in planning to treat AIDS patients. Plaintiff believes that Giacobbe's reaction was caused by his fear that the Department of Health would advocate that the SPH/RCI care for AIDS patients.

On April 10, 1992, shortly after the staff meeting, Giacobbe summoned Finley to his office and informed her that he was extending her probationary period because, after the period ended, it "would be very hard to get rid of her." Giacobbe further told plaintiff not to buy a house in Rockland County "so she wouldn't get hurt."

On April 27, 1992, Giacobbe summoned Finley to meet with him and the personnel director for the Department of Hospitals. At the meeting, Giacobbe demanded that Finley resign or he would terminate her employment despite the fact that there was nothing negative in her personnel file. The only reason Giacobbe provided for the request was the fact that he did not "mesh" with her.

After further discussion with Giacobbe and Grant, Finley was informed if she did not resign, her employment would be terminated. Consequently, Finley sent a letter of resignation to Grant on May 18, 1992, effective May 22.

Plaintiff alleges several causes of action. Her first, second and fourth causes of action are brought under § 503 of the ADA, 42 U.S.C. § 12203, § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and New York State Human Rights Law, N.Y. Executive Law §§ 292(9) and 296(2) ("Human Rights Law"), respectively, and allege that defendants terminated her employment in retaliation for her encouragement that persons with AIDS exercise their rights under the statutes.[1]

Plaintiff's third and seventh causes of action are civil rights claims. For her third cause of action, plaintiff alleges that the defendants, acting under color of state law, deprived her of her rights under the ADA and the Rehabilitation Act. The seventh cause of action alleges that defendants' termination of plaintiff's employment violated her due process rights.

Plaintiff's fifth cause of action is brought against the Department of Hospitals, SPH/RCI and the County for breach of her employment contract. Her sixth cause of action is only against Grant and Giacobbe for tortious interference with her employment contract.

Defendants now move, pursuant to F.R.Civ.P. 12(b)(6), that we dismiss the complaint in its entirety for failure to state a claim upon which relief can be granted.

ANALYSIS

I. *Failure to File a Notice-of-Claim (First, Second, Third, Fourth and Seventh Causes of Action)*

Defendants argue that plaintiff's first, second, third, fourth and seventh causes of action must be dismissed because plaintiff failed to serve a timely notice-of-claim upon the County. Defendants claim that N.Y. County Law requires that a timely notice-of-claim be filed pursuant to N.Y. Municipal Law §§ 50–e and 50–i before an action can be commenced for a claim against a county based on misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, employees or agents.

A. § 1983 Claims

■ In *Felder v. Casey,* 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988), the Su-

---

1. Plaintiff's Rehabilitation Act claim is only against the Department of Hospitals, SPH/RCI and the County. Her Human Rights Law claim is against all defendants but the County.

preme Court reversed a Supreme Court of Wisconsin holding that a state notice-of-claim statute applied in federal civil rights actions brought in state court under § 1983. The Supreme Court found that the notice-of-claim requirement was "inconsistent in both the purpose and objective of federal civil rights law [and that p]rinciples of federalism as well as the Supremacy Clause, dictate that such a state law must give way to vindication of a federal right." *Id.* at 153, 108 S.Ct. at 2314. The Court also wrote that it "fully agree[d] with the near unanimous conclusion of the federal courts" that notice-of-claim provisions are inapplicable to § 1983 actions brought in federal court. *Id.* at 140, 108 S.Ct. at 2307. *See Brown v. United States,* 742 F.2d 1498 (D.C.Cir.1984), *cert. denied,* 471 U.S. 1073, 105 S.Ct. 2153, 85 L.Ed.2d 509 (1985).

Before adopting the "near unanimous conclusion" of the federal courts, the Supreme Court noted one exception to unanimity citing *Cardo v. Lakeland Cent. School Dist.,* 592 F.Supp. 765 (S.D.N.Y.1984). In *Cardo,* the district court dismissed a § 1983 claim against a school board due to plaintiff's failure to file a timely notice-of-claim. *Cardo* cites the main case which defendants rely on *Mills v. Monroe County,* 59 N.Y.2d 307, 464 N.Y.S.2d 709, 451 N.E.2d 456 (1983), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 551, 78 L.Ed.2d 725 (1983).[2] In *Mills,* the New York Court of Appeals held that a former county employee's failure to file a notice-of-claim barred a discrimination suit under 42 U.S.C. § 1981.

Under *Felder,* it is clear that *Cardo*'s holding is a dead letter, and New York's notice-of-claim requirement does not apply to

§ 1983 actions. *See Summers v. County of Monroe,* 147 A.D.2d 949, 537 N.Y.S.2d 703, 706 (4th Dep't 1989), *appeal dismissed,* 74 N.Y.2d 735, 544 N.Y.S.2d 819, 543 N.E.2d 84 (1989) (holding that state notice-of-claim requirements cannot defeat a federal substantive right). Plaintiff's third and seventh causes of actions are § 1983 claims. Accordingly, we deny defendants' motion to dismiss those causes of action based on plaintiff's failure to file a timely notice-of-claim.

**B.   ADA and Rehabilitation Act Claims**

■ Plaintiff argues that the reasoning in *Felder* also applies to her ADA and Rehabilitation Act claims,[3] and, as such, New York notice-of-claim provisions should not apply to either cause of action. In *Felder,* the Supreme Court distinguished notice-of-claim requirements from statutes of limitations. It wrote that, unlike statutes of limitation, "[n]otice-of-claim provisions ... are neither universally familiar nor in any sense indispensable prerequisites to litigation, and there is thus no reason to suppose Congress intended federal courts to apply such rules which 'significantly inhibit the ability to bring federal actions.'" *Felder,* 487 U.S. at 140, 108 S.Ct. at 2307, *quoting Brown,* 742 F.2d at 1507.

■ Applying the reasoning of *Felder,* we find there is similarly no reason for us to suppose Congress intended that state notice-of-claim provisions should apply to ADA or Rehabilitation Act claims. Application of such provisions would significantly alter the important federal rights created by the two statutes. Absent evidence of a Congressional intent to the contrary, we decline to apply

**2.** Defendants also cite *Brown v. Coughlin,* 758 F.Supp. 876 (S.D.N.Y.1991) which involves a state negligence and/or malpractice claim for which the plaintiff failed to file a notice of claim. In dicta, the *Brown* court cites *Mills* for the proposition that N.Y. General Municipal Law § 50–e would also apply to federal civil rights claims.

**3.** Because plaintiff's claim has been brought under Title II, rather than Title I, of the ADA there is no requirement that she exhaust administrative remedies prior to filing suit in federal court. Similarly there is no exhaustion requirement for plaintiff's Rehabilitation Act claim.

Unlike Title I which incorporates Title VII's enforcement procedures, Title II adopts the procedures set forth in § 505 the Rehabilitation Act, 29 U.S.C. § 794a. *See* 42 U.S.C. §§ 12117, 12133.

There is no requirement under the Rehabilitation Act that nonfederal employees exhaust administrative remedies. Indeed, there is no explicit private right to sue under the Rehabilitation Act. Thus, while courts have created a private right of action, there is no requirement that plaintiff exhaust administrative remedies before filing in federal court. *See Petersen v. University of Wisconsin Bd. of Regents,* 818 F.Supp. 1276 (W.Wis.1993).

New York's notice-of-claim requirement to plaintiff's Rehabilitation Act and ADA claims. Thus, we deny defendants' motion to dismiss plaintiff's first and second causes of action based on her failure to file a notice-of-claim.

## C. Human Rights Law Claim

■] Plaintiff claims that her fourth cause of action based on N.Y. Human Rights Law should not be dismissed because it falls within the "public interest" exception to the notice-of-claim requirement. In *Mills,* the New York Court of Appeals stated that "notice of claim requirements do not apply to actions brought to 'vindicate a public interest.'" 59 N.Y.2d at 311, 464 N.Y.S.2d 709, 451 N.E.2d 456 (*quoting Union Free School District v. New York State Human Rights Appeal Bd.,* 35 N.Y.2d 371, 362 N.Y.S.2d 139, 320 N.E.2d 859 (1974)). While all civil rights actions can be said to be in the public interest, actions

> which seek relief for a similarly situated class of the public, and whose resolution would directly affect the rights of that class or group are deserving of special treatment. The interests in their resolution on the merits override the State's interest in receiving timely notice before commencement of an action.

*Id.*

Plaintiff claims that her claim seeks to vindicate the public interest because she was seeking to reverse defendants' history of illegally refusing treatment to persons with AIDS when she was fired and the resolution of her Human Rights claim would directly affect the rights of a group deserving special treatment.

While it may be true that a victory for the plaintiff in this case may have a positive effect on persons with AIDS, we cannot say that her cause of action is more imbued with the "public interest" than those of other state human rights plaintiffs. First, plaintiff's prayer for relief requests either money damages or, as an alternative to lost salary, reinstatement. Thus, she could win her

claims against defendants and still not be in any position to help persons with AIDS. Further, even if plaintiff was reinstated, we could not guarantee, nor should we be able to guarantee, that her continued tenure would have positive repercussions for persons with AIDS. Finally, while plaintiff's recovery might have a deterrent effect on other employers who might think about retaliating against those who seek to aid the disabled, we do not think that such a deterrence would be of any greater value to the public than any other award to a civil rights plaintiff. Therefore, we grant defendants' motion to dismiss plaintiff's fourth cause of action.

## II. Failure to State a Breach of Contract Claim (Fifth Cause of Action)

Defendants claim that plaintiff's fifth cause of action should be dismissed because she has failed to state a wrongful discharge claim.[4] They cite *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983) for the proposition that an employment contract for an indefinite term is presumed to be "at-will" and can be terminated at any time for any reason or for no reason whatsoever. Defendants claim that plaintiff has failed to state a claim because she cannot allege an employment contract for a definite term, nor can she allege a contract with a "just cause" provision.

Plaintiff maintains that state laws and regulations, county laws, and by-laws of the SPH/RCI constituted the terms of her employment and that such laws and regulations provided that she could only be terminated by SPH/RCI's Board of Governors. Thus, she claims that she was not an at-will employee and had a contractual right to continued employment until terminated by the Board.

## A. Applicable Law

■ The first hurdle plaintiff must overcome is establishing that New York would

recognize regulations and hospital by-laws as implied contractual terms. In support of her position, plaintiff cites *Weiner v. McGraw Hill,* 57 N.Y.2d 458, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982) for the proposition that promises or policies orally expressed or contained in documents can be treated as implied terms in an employment contract and rebut the at-will presumption. However, *Weiner* is distinguishable in that the employee signed and submitted a preprinted form which stated that his employment would be subject to the provisions in his employer's handbook on personnel policies and procedures. *Id.* at 460, 457 N.Y.S.2d 193, 443 N.E.2d 441.

Plaintiff also cites a recent case, *Wieder v. Skala,* 80 N.Y.2d 628, 636, 593 N.Y.S.2d 752, 609 N.E.2d 105 (1992), in which the New York Court of Appeals found that in any hiring of an associate at a law firm, there is an implied obligation that both the firm and the attorney will practice law in accordance with the ethical standards of the profession as set forth by DR 1–103(A) of the Code of Professional Responsibility.[5] She further cites *Murphy v. St. Agnes Hospital,* 107 A.D.2d 685, 484 N.Y.S.2d 40, 43 (2d Dep't 1985) in which the Appellate Division wrote, "to suggest that a hospital is not bound by its by-laws ... would reduce the by-laws to a 'meaningless mouthing of words.'"

*Murphy* involved an anesthesiologist who brought an Article 78 proceeding when his hospital privileges were revoked without following the proper procedures as set out in the by-laws. The Appellate Division found that the hospital had an obligation to comply with its by-laws based either on "fundamental fairness" or "principles of contract law." *Id.* However, a subsequent case, *Giannelli v. St. Vincent's Hospital,* 160 A.D.2d 227, 553 N.Y.S.2d 677 (1st Dep't 1990), cites *Murphy* for the proposition that medical staff by-laws can form the basis of a claim for breach of contract or tortious interference with contractual relations. *Id.* 553 N.Y.S.2d at 680.

Defendants argue that the Court of Appeals holding in *Wieder* is distinguishable because it was premised on the distinctive relationship between a law firm and a lawyer hired as an associate. The *Wieder* court reasoned that when an associate is hired there is "implied an understanding so fundamental to the relationship and essential to its purpose as to require no expression: that both the associate and the firm in conducting the practice will do so in accordance with the ethical standards of the profession." *Wieder,* 80 N.Y.2d at 636, 593 N.Y.S.2d 752, 609 N.E.2d 105. Further, in every contract there is "an implied undertaking on the part of each party that he will not intentionally and purposefully do anything to prevent the other party from carrying out the agreement on his part." *Id.* at 637, 593 N.Y.S.2d 752, 609 N.E.2d 105 (*quoting Patterson v. Meyerhofer,* 204 N.Y. 96, 97 N.E. 472 (1912)). The court found in that instance defendants were making it impossible for plaintiff to carry out his duties under his employment agreement, that is to practice law in compliance with prevailing ethical standards. However, the court warned that its decision should not be read as to incorporate each provision of the Code of Professional Responsibility as an implied term in every contractual relationship among lawyers. We agree with defendants that plaintiff's contract claim is distinguishable from *Wieder* because the by-laws and regulations on which she relies on do not govern the very essence of her employment.

The more difficult cases for defendants to deal with are *Giannelli* and *St. Agnes* which specifically deal with hospitals' failure to comply with by-laws in the termination of doctors' privileges. While the Appellate Division never clearly stated the basis for its holding in *St. Agnes, Giannelli* clearly states that medical by-laws can form the basis for a breach of contract claim.

Defendants attempt to distinguish *St. Agnes* and *Giannelli* because both cases involved suspensions of doctors' hospital privileges rather than termination of hospital employment. However, we find this to be a

---

**5.** DR 1–103(A) provides, "[a] lawyer possessing knowledge, not protected as a confidence ... that raises a substantial question as to another lawyer's honesty, trustworthiness or fitness in other respects to practice as a lawyer shall report such knowledge to a tribunal or other authority empowered to investigate or act upon such violation."

distinction without consequence. Regardless of whether the termination of a doctor's employment or hospital privileges are at issue, in both instances we are dealing with by-laws which set forth certain procedures for the termination of valuable interests. The same fairness considerations which concerned the Second Department in *St. Agnes* apply here. Indeed, it would be fundamentally unfair for a hospital to set out personnel procedures in its by-laws and then fail to abide by them. Therefore, we hold that, under New York law, hospital by-laws can form the basis of a breach of an employment contract claim.

### B. Applicable Law, Regulations and By-Laws

Plaintiff claims that, if she succeeds in establishing that an implied contract exists, the regulations and by-laws incorporated in such a contract prohibit her termination by any party other than the Board of Governors. Specifically, she cites 10 N.Y.C.C.R. § 405.2(e)(2) which states that the "governing body shall appoint a physician, referred to in this Part as the medical director." The regulations further provide that "[n]o contracts/arrangements or other agreements may limit or diminish the responsibility of the governing body in any way." *Id.* at 405.2(b). Because the Board of Governors is SPH/RCI's governing body, plaintiff claims it has the non-delegable responsibility to hire and fire the medical director.

Plaintiff further argues that her claim is supported by the SPH/RCI by-laws which vest the Board of Governors with sole and full authority to make or terminate appointments to the medical staff. Specifically, Art. III § 3 states, "final responsibility for appointment or cancellation of an appointment [to the medical staff] rests with the Board of Governors."

Defendants respond by arguing that the power to hire and fire the medical director falls under the Commissioner's general authority to manage the hospital. The regulations provide that the chief executive officer "is responsible to the governing body for the management of the hospital," including daily management and operations. 10 N.Y.C.R.R. §§ 405.2(d), 405.3. Further, section 405.3(b)(1) states that the chief executive officer shall develop and implement personnel policies and procedures.

Defendants further contend that the hospital by-laws similarly designate day to day management to the Commissioner. The definition section of the by-laws define "Commissioner" as "the individual recommended by the governing body and appointed by the County Executive to act in their behalf in the overall management of the hospital." Defendants argue that this provision gave Giacobbe authority to act on behalf of the board when he made the decision to terminate plaintiff.[6]

The essence of the argument before the court is whether or not the hiring and firing of the medical director falls under the rubric of daily hospital management. For purposes of a motion to dismiss, we cannot say, as a matter of law, that it does.

According to the regulations, the medical director is responsible for "directing the medical staff organization in accordance with the provisions of section 405.4." 10 N.Y.C.R.R. § 405.2. Section 405.4 provides that the medical staff shall be organized by and accountable to the governing body for the quality of medical care provided. Reading these two regulations together, a reason-

---

**6.** Defendants also argue that the by-law provision, contained in Art. III., giving the Board exclusive power to make employment determinations does not apply to the position of medical director because the position does not fall under the heading of medical staff. They base this reading on the fact that appointments pursuant to Article III are to be made upon the recommendations of the medical executive committee and the medical director.

We disagree with this argument on three grounds. First, it seems ludicrous to require that appointments to the medical staff require Board approval and not require such approval for the more important position of medical director. Second, the requirement that appointments are to be made upon the recommendation of the medical director might be read to require that the Board solicit recommendations from out-going medical directors for their replacements whenever possible. Finally, the by-laws define "medical staff" as including "*all* medical physicians ... holding unlimited licenses ... who are privileged to attend patients at the hospital."

able finder of fact could conclude that the medical director was solely responsible to the governing body. Further, while both the regulations and by-laws give the Commissioner the day-to-day responsibility to manage the hospital, it does not follow as a matter of law that such day to day responsibilities would include the hiring and firing of the Medical Director. Because we cannot say that plaintiff has failed to state a claim, we deny defendants' motion to dismiss plaintiff's breach of contract claim.

### III. *Failure to State the Claim of Tortious Interference with Contract (Sixth Cause of Action)*

■ Defendants argue that we must dismiss plaintiff's claim for tortious interference with contract because (1) she has failed to establish a contract and (2) Giacobbe and Grant were acting as agents for their employer and thus cannot interfere with the contract.

Defendants argue, even accepting that plaintiff had an employment contract, such a contract would have been with Rockland County and the Department of Hospitals. Claiming plaintiff has not alleged that Giacobbe and Grant acted outside their official duties, defendants argue that we must accept that they were acting within the scope of their employment, and the claim must be dismissed because an agent cannot be liable for inducing its principal to breach a contract.

Reading the complaint in favor of the plaintiff, as we must do on a motion to dismiss, we find that plaintiff did allege that Giacobbe and Grant were acting outside the scope of their official duties. Paragraph 47 of the complaint states "Giacobbe and Grant lacked the authority under state law and regulations, under the county charter, under laws of the county and under by-law of the SPH/RCI to discharge or otherwise force the

resignation-termination of Dr. Finley." Paragraph 40 states, "Giacobbe, without the authority and power to do so ... usurped the power of the Board of Governors and wrongfully assumed such powers unto himself, and with the aid of Grant ... effected the discharge of Dr. Finley."[7]

Because we find that plaintiff has alleged that the individual defendants were not acting as agents for their employers, the success of defendants' motion to dismiss the sixth cause of action will turn on whether plaintiff has succeeded in alleging the breach of an employment contract. As discussed above, we cannot say as a matter of law that plaintiff has failed to state a breach of contract claim. Therefore, we deny defendants' motion to dismiss plaintiff's claim of tortious interference with contract.

### IV. *Failure to State a § 1983 Claim Based On Denial of Due Process (Seventh Cause of Action)*

■ We have already dealt with defendants motion to dismiss plaintiff's seventh cause of action based on her failure to file a notice-of-claim. However, defendants also claim that the cause of action should be dismissed because plaintiff has failed to state a claim.

Plaintiff's seventh claim alleges that by operation of the County Civil Service Rules, plaintiff was a permanent employee at the time that defendants forced her resignation. As a permanent employee, she claims that the hospital by-laws and county civil service rules provided that she could only be discharged for certain reasons and not without a hearing.

Specifically, plaintiff alleges that County Civil Service Rules guaranteed permanency of appointment after the completion of an eight week probationary period unless the employee is notified by the appointing au-

---

7. Defendants argue that this cause of action should be dismissed because plaintiff has failed to file a notice-of-claim. In response, plaintiff cites Rockland County law which prohibits the County from indemnifying an employee where the injury "resulted from acts outside the scope of the employee's public employment or duties." Taking plaintiff's factual allegations that the indi-

vidual defendants were acting outside the scope of their duties as true, the County would be under no obligation to indemnify them. Accordingly, no notice-of-claim would be required. Therefore, we deny defendants' motion to dismiss plaintiff's sixth cause of action for failure to file a notice of claim.

**224**

thority at least two weeks prior to the end of the probationary period that the period is being extended. Plaintiff argues that Giacobbe had no authority to extend her probationary period, and therefore, her probationary period was never extended.

In the alternative, plaintiff argues that Giacobbe's letter attempting to extend her probation came too late. County Civil Service Rule XVI 1.d. states that an appointment shall become permanent upon the completion of eight weeks of employment, "unless the probationer, prior to but within two weeks of the completion of such service, is given written notice that the probationary period will be continued."

Giacobbe sent Finley a written notice on January 28, 1992. The complaint alleges that Finley's employment began on December 3, 1991 and that the eight week period ended on January 27, 1992. However, defendants argue that the rules also require that the probationary period be extended for each day over ten that the plaintiff has taken as leave. Rockland County Civ.Serv.R. XVI(5). Because plaintiff was absent twelve days, defendants claim that the eight week period must be extended to January 29, 1992. Defendants submit the fact that plaintiff was absent twelve days through the affidavit of Anita Caminez.

While defendants' argument that the initial probationary period must be extended appears to have merit, on a motion to dismiss we cannot entertain facts outside the pleadings and must accept plaintiff's factual allegations as to the end of the probationary period as true. *LaBounty*, 933 F.2d at 123. Therefore, we deny defendants' motion to dismiss plaintiff's § 1983 claim based on the deprivation of her due process rights.

In summary, defendants' motion to dismiss plaintiff's state Human Rights claim, the fourth cause of action, is granted. Defendants' motion to dismiss plaintiff's other six causes of action is denied.

SO ORDERED.