■ In the Matter of TERENCE MURPHY, Respondent, v ST. AGNES HOSPITAL et al., Appellants. — In a proceeding pursuant to CPLR article 78, the appeal is from a judgment of the Supreme Court, Westchester County (Dickinson, J.), entered March 22, 1983, which vacated the summary suspension of petitioner's privileges as an anesthesiologist on the staff of appellant St. Agnes Hospital.

Judgment affirmed, with costs.

Petitioner commenced this article 78 proceeding to challenge his summary suspension from his position as an anesthesiologist on the staff of St. Agnes Hospital (hospital). The decision to suspend petitioner was made at a meeting of the hospital's Joint Conference Committee (JCC). The minutes of the meeting of the JCC reveal that there was some discussion about "personality clashes" between petitioner and other staff members, and that some surgeons in the hospital did not want to work with petitioner as an anesthesiologist, while others had no complaints. The chairman of the hospital's Medical Board, Dr. Richard Neudorfer, stated at the meeting that he had never had any difficulty with petitioner in his professional capacity, that he personally was comfortable performing surgery with petitioner as an anesthesiologist, and that some patients and other surgeons had requested the services of Dr. Murphy to provide anesthesia. Some persons at the meeting expressed concern that petitioner's mood swings and agitation were signs of mental impairment. The hospital's attorney advised the JCC that the Public Health Law requires that the hospital administration report to the Public Health Council for investigation any physician who is suspected of suffering from a mental impairment. Expressing the desire to protect both the patients and the hospital pending a State investigation, the JCC voted to invoke the provision in the hospital's by-laws authorizing the summary suspension of petitioner's privileges, effective immediately. Petitioner was informed in writing of his suspension and of the hospital's submission of a report pursuant to section 230 of the Public Health Law. He was advised that these actions had been taken in the belief that he may have a mental disability or impairment which manifests itself in periodic defects in the delivery of professional care to patients.

In accordance with the hospital's by-laws, a hearing was conducted on the matter of petitioner's summary suspension. At that hearing, the Medical Board agreed that the decision by the JCC had been based on allegations which were lacking in substance, and that the summary suspension should be nullified by the Board of Trustees. Appellant Herfort requested that a second meeting of the Medical Board be convened in order to reconsider the merits of the allegation presented to the JCC. At the second meeting, the Medical Board decided to recommend to the Board of Trustees that the suspension be revoked should psychiatric evaluation of petitioner by a psychiatrist of the hospital's choice fail to establish any evidence of a mental disability. A psychiatrist chosen by the hospital interviewed and tested petitioner and concluded that there was no evidence of any psychiatric illness to preclude his functioning as an anesthesiologist. Nevertheless, the suspension was not revoked.

Thereafter, petitioner commenced this proceeding pursuant to CPLR article 78 to review his suspension, naming as respondents the hospital, the Board of Trustees, Gerald Fitzgibbon as Hospital Administrator, and Robert Herfort, as chairman of JCC and as president of the medical staff. Petitioner alleged, *inter alia,* that (1) there was no valid reason for the summary suspension; (2) appellant Herfort had acted arbitrarily and in bad faith in requesting a second meeting of the Medical Board after the Medical Board had resolved to recommend to the Board of Trustees that petitioner's suspension be annulled and his privileges immediately restored; and (3) after a psychiatrist chosen by the hospital attested to petitioner's competence (which the Medical Board had decided was the precondition to restoration of his privileges), appellants acted "arbitrarily, [and] capriciously, in the absence of any substantial evidence whatsoever that the Petitioner is in any way mentally disabled and/or impaired, and in bad faith, refused to act on the expert recommendation of their own Medical Board in accordance with Article V, Section 2 of their own By-laws, and on the expert evaluations of two qualified psychiatrists, to lift petitioner's suspension and restore his privileges".

Appellants answered, alleging, *inter alia,* that the court was without jurisdiction inasmuch as petitioner had failed to exhaust his administrative remedies. According to appellants, petitioner was not only required to first exhaust the administrative remedies set forth in the appellant hospital's by-laws, but he was required to exhaust the remedies provided in the Public Health Law as well.

In a decision and judgment entered March 22, 1983, Special Term (Dickinson, J.), held that the summary suspension was

illegal and should be vacated. The court found that the appellant hospital had failed to adequately comply with its own by-laws, inasmuch as it failed to give petitioner written notice of any adverse determination by the Medical Board. Moreover, since the Medical Board's decision was in fact favorable to petitioner there was no need for a further hearing. The court further held that the Board of Trustees acted arbitrarily and capriciously in failing to act on the recommendation of the Medical Board.

At the outset, we note that, in addition to the failure to provide petitioner the requisite written notice of any adverse decision by the Medical Board or the Board of Trustees, appellants' decision to suspend petitioner was made at an informal disciplinary meeting of the JCC. Review of the appellant hospital's by-laws reveals that JCC is not empowered to conduct disciplinary hearings or recommend corrective action. Furthermore, article V of the by-laws provides that disciplinary action may only be considered at meetings held by an *ad hoc* committee appointed by the president of the medical and dental staff.

As stated by this court in *Chalasani v Neuman* (97 AD2d 806): "New York State regulations provide that a hospital must have 'a medical staff organized under bylaws approved by the governing body' (10 NYCRR 405.1023; see 10 NYCRR 405.1 [a]). Those regulations further require that the by-laws of a hospital shall include '[a] procedure for granting and withdrawing privileges to physicians' and '[a] mechanism for appeal of decisions regarding medical staff membership and privileges' (10 NYCRR 405.1023 [i] [2] [iii], [iv]). To suggest that a hospital is not bound by its by-laws, which are mandated by the regulations, would reduce the by-laws to a 'meaningless mouthing of words' (see *Tedeschi v Wagner Coll.*, 49 NY2d 652, 662)."

Whether the appellants' obligation to comply with the procedures governing disciplinary action set forth in the appellant hospital's by-laws is grounded in concepts of fundamental fairness, principles of contract law or the law of associations (see *Weiner v McGraw-Hill, Inc.*, 57 NY2d 458, 462; *Tedeschi v Wagner Coll.*, 49 NY2d 652, 660), the appellants' failure to comply with those procedures requires that petitioner's summary suspension be annulled.

In addition, we reject appellants' contention that an article 78 proceeding is not the appropriate vehicle for review of petitioner's claim that they failed to comply with the hospital's by-laws (see *Matter of Carr v St. Johns Univ.*, 17 AD2d 632, affd 12 NY2d 802; *Matter of Caso v New York State Public High School Athletic Assn.*, 78 AD2d 41; *Matter of Paglia v Staten Is. Little League*, 38 AD2d 575; see, also, *Matter of Auer v Dressel*, 306 NY 427).

Similarly we reject appellants' argument that the trial court was without jurisdiction to entertain petitioner's claim because of his failure to exhaust his remedies under the by-laws and/or his failure to exhaust the administrative remedies set forth in the Public Health Law. Our review of the hospital's by-laws leads us to conclude that, under the circumstances, there were no further remedies available to petitioner.

Moreover, petitioner's challenge to his summary suspension does not fall within the scope of administrative review envisaged by section 2801-b of the Public Health Law. In relevant part, section 2801-b provides:

"1. It shall be an improper practice for the governing body of a hospital to refuse to act upon an application for staff membership or professional privileges or to deny or withhold from a physician * * * staff membership or professional privileges in a hospital, or to exclude or expel a physician * * * from staff membership in a hospital or curtail, terminate or diminish in any way a physician's * * * professional privileges in a hospital, without stating the reasons therefor, or if the reasons stated are unrelated to standards of patient care, patient welfare, the objectives of the institution or the character or competency of the applicant.

"2. Any person claiming to be aggrieved by an improper practice as defined in this section may, by himself or his attorney, make, sign and file with the public health council a verified complaint in writing which shall state the name and address of the hospital whose governing body is alleged to have committed the improper practice complained of and which shall set forth the particulars thereof and contain such other information as may be required by the council * * *

"4. The provisions of this section shall not be deemed to impair or affect any other right or remedy".

Clearly this statute was enacted primarily to protect physicians (*Matter of Cohoes Mem. Hosp. v Department of Health,* 48 NY2d 583, 591) and was intended to abrogate the common-law rule that a hospital could terminate a physician's privileges for any reason, even an arbitrary one, with immunity from judicial scrutiny (*Matter of Cohoes Mem. Hosp. v Department of Health, supra,* pp 587-588; see, also, *Guibor v Manhattan Eye, Ear & Throat Hosp.,* 46 NY2d 736, 737). "No longer may a physician be denied professional privileges arbitrarily * * * Reasons must be given for any termination, and those reasons must relate to legitimate concerns of the hospital * * * patient care, patient welfare, objectives of the institution, or competency of the physician" (*Fried v Straussman,* 41 NY2d 376, 380). The statute

provides that a physician "claiming to be aggrieved by an improper practice" may file a complaint with the Public Health Council for investigation (Public Health Law, § 2801-b, subd 2). An improper practice as defined by that section is one whereby a physician's privileges are terminated for (1) unstated reasons, or (2) reasons unrelated to patient care, objectives of the institution or competency of the institution. Hence, since appellants had in fact stated their reasons for suspending petitioner, and the stated reasons did relate to institutional concerns, petitioner was justified in not resorting to the administrative remedy provided by section 2801-b of the Public Health Law. It is clear from subdivision 4 of section 2801-b that petitioner's right to challenge in a CPLR article 78 proceeding appellants' failure to adhere to the hospital's own by-laws is not precluded by that section, and he properly sought such review herein. Mollen, P. J., Weinstein, Rubin and Eiber, JJ., concur.