■ In the Matter of LEONARDO R. MARTINEZ, Appellant, v DOWNSTATE MEDICAL CENTER OF THE STATE UNIVERSITY OF NEW YORK et al., Respondents.—In a proceeding pursuant to CPLR article 78, *inter alia,* to compel respondents Downstate Medical Center of the State University of New York (Downstate) and Kings County Hospital Center (KCHC) to reinstate petitioner to a position as director of the Joint Respiratory and Surgical Intensive Care Unit at Downstate and KCHC and to reinstate him as a tenured associate professor at Downstate, and to transfer the ICU back to the Department of Anesthesiology, petitioner appeals from a judgment of the Supreme Court, Kings County (Rader, J.), dated April 27, 1983, which dismissed the petition except to the extent that it remitted the issues of the denial of petitioner's promotion and of tenure status to Downstate for further administrative review.

On the court's own motion, appellant's notice of appeal is treated as an application for leave to appeal from so much of the judgment as remitted the issues of the denial of petitioner's promotion and tenure status to Downstate for further administrative review, said application is referred to Justice Mangano and leave to appeal is granted by Justice Mangano (CPLR 5701 [b] [1]).

Judgment modified, on the law, (1) by granting that branch of the petition which sought to implement the decision of the Medical Board of KCHC and to reinstate petitioner to a position comparable to director of the ICU at Downstate and KCHC; and (2) by deleting the provision thereof which remitted the issues of promotion and tenure for administrative review under the collective bargaining agreement of the parties, and substituting therefor a provision remitting the issue of whether petitioner should be reinstated as a tenured associate professor at Downstate together with all accrued compensation, benefits and interest, to respondent Downstate for determination pursuant to the hearing and appeals procedure provided for in section 10 of article 3 of the bylaws of the Medical and Dental Staff of State University Hospital of Downstate, at which proceeding all the respondents shall have their views and positions heard and which determination shall be binding on all respondents. As so modified, judgment affirmed, with one bill of costs to petitioner payable by respondents appearing separately and filing separate briefs.

Prior to 1980, petitioner for many years had a joint appointment as an attending physician in the Department of Anesthesiology at KCHC and as an associate professor of anesthesiology at Downstate, to which rank he had been promoted in 1971. Petitioner, who is a specialist in the subspecialty of critical care medicine, helped form the ICU which was administered by the Department of Anesthesiology and which served both KCHC and Downstate.

In 1980, respondent Dr. James Cottrell, chairman of the Department of Anesthesiology at Downstate and chief of anesthesiology at KCHC, and others decided to transfer the administration of the ICU from the Department of Anesthesiology to the Department of Surgery. In August 1980, petitioner returned from a nine-month leave of absence he had taken due to a heart attack and was informed by Dr. Cottrell that he had been reassigned to work in the operating room instead of the ICU. Petitioner protested this reassignment in light of the many years of service he had given in forming the ICU, because the reassignment placed him in a position that he believed made less use of his abilities and experience, and because it appeared to him to entail a loss of prestige. Petitioner initially refused to report to his new assignments and instead appeared at his previous position as director of the ICU. In November 1980, he commenced a prior proceeding pursuant to CPLR article 78 to challenge the reassignment as well as the pending transfer of the ICU to the Department of Surgery. In an order to show cause in that proceeding, Special Term directed respondents to pay petitioner at the rate of pay for the position of director of ICU so long as petitioner reported for and performed the duties assigned him. While Dr. Cottrell asserted in that proceeding that petitioner did not report to the recovery room to which he was later assigned, several co-workers supported petitioner's claim that he did in fact report there.

Meanwhile, according to petitioner, in October 1980, Dr. Cottrell formed an Alternate Route Committee for making recommendations for academic promotions, recommended that petitioner not be appointed to this committee because he was too ill, and instituted a review of petitioner's qualifications for purposes of promotion to the rank of full professor, although petitioner had not requested such a review at that time. The Alternate Route Committee decided against recommending the promotion. Petitioner also sought to vacate that recommendation in the prior proceeding.

In December 1980, while that prior proceeding was still

pending, Cottrell advised Downstate and KCHC to stop payment on petitioner's salary checks and not to send further payments, based on Dr. Cottrell's allegation that petitioner was not reporting for work. On Dr. Cottrell's recommendation, a letter dated January 5, 1981 was mailed to petitioner informing him that pursuant to section 23.10 of the collective bargaining agreement between the State and the United University Professions, Inc. (the UUP agreement) he was deemed to have resigned his position as associate professor effective January 2, 1981 for failing to report to work since October 23, 1980.

Thereafter, in a judgment dated April 21, 1981, Special Term (Shaw, J.), dismissed the prior article 78 proceeding on the ground that petitioner had failed to exhaust his administrative remedies. The court directed that the parties submit the matter to KCHC "for a proper disposition under the procedures set forth in Article X of the by-laws of the parties". Under said procedures, an ad hoc hearing committee of the Medical Board of KCHC held a hearing and then concluded that neither petitioner's appointment as "Attending Physician of Anesthesiology" nor his exercise of clinical privileges had been adversely affected. Thereafter, a hearing was conducted by the Medical Board, which Board then voted to reject the findings of the ad hoc committee. The Board decided that petitioner should be reinstated to a position within the Department of Anesthesiology comparable to that which he had held before his dismissal.

Upon the refusal of respondent KCHC or the then New York City Health and Hospitals Corporation (HHC) President Stanley Brezenoff to follow these recommendations, petitioner commenced the instant proceeding pursuant to CPLR article 78. In this proceeding, petitioner, *inter alia,* sought his reinstatement to a position as director of the ICU, and to his position as a tenured associate professor, and to transfer the ICU back to the Department of Anesthesiology.

Special Term (Rader, J.), in a judgment dated April 27, 1983, denied that branch of the petition which pertained to petitioner's reassignment from his position as director of the ICU and to the transfer of the ICU to the Department of Surgery, and remitted the issues of "forced" resignation, promotion and tenure to respondents for further administrative review by Downstate under the UUP agreement. The court left open the question of timeliness with respect to the filing of such grievances under the UUP agreement.

Thereafter, in response to petitioner's subsequent request

for an administrative hearing, Downstate declined to hear the merits of the propriety of the loss of the faculty appointment or of the promotion issue. It asserted that these issues were the exclusive domain of the UUP agreement and that petitioner was time barred by a 45-day time limit for the filing of grievances under the UUP agreement. This appeal was then perfected.

As petitioner conceded during oral argument, Special Term's dismissal on the merits of the claim regarding transfer of the ICU was proper. The decision to transfer the ICU to a different department is an example of an internal administrative decision for which judicial review is not appropriate (*Jones v Beame,* 45 NY2d 402; *New York State Inspection, Sec. & Law Enforcement Employees v Cuomo,* 103 AD2d 312, *affd* 64 NY2d 233).

However, the decision to reassign petitioner from his position as director of the ICU and the refusal of respondents to reinstate petitioner to a comparable position are not beyond judicial review. Under section 4 of article X of the KCHC bylaws, the Medical Board's "recommendation" that petitioner be reinstated is not subject to further review by the president of the HHC. Such a review and independent determination by the president is authorized only where the Medical Board's decision is adverse to the practitioner. If it is favorable to the practitioner, no further review is constitutionally required and none is provided for under the bylaws. The Medical Board then is the final level of review and its decision is binding on respondents who must implement that decision (*Matter of Murphy v St. Agnes Hosp.,* 107 AD2d 685, 687; *see, Weiner v McGraw-Hill, Inc.,* 57 NY2d 458, 462; *Tedeschi v Wagner Coll.,* 49 NY2d 652). A proceeding pursuant to CPLR article 78 lies to compel compliance with the determination of the Medical Board (*Matter of Murphy v St. Agnes Hosp., supra*). Accordingly, that branch of the petition seeking said compliance should be granted.

The issue of the propriety of Downstate's decision to terminate petitioner's appointment as a tenured faculty member by deeming that he had resigned had not been raised in the prior proceeding pursuant to CPLR article 78 and was not resolved at the Medical Board's hearing and in its subsequent decision. Respondent Downstate argues, first, that petitioner has failed to exhaust his administrative remedies, and second, that the sole remedy available to challenge the termination was the UUP grievance procedure which had a time limit of 45 days from the date petitioner learned of the acts complained of.

Petitioner argues that if any administrative remedy is required, it is the bylaws of Downstate's Medical and Dental Staff that are controlling and that since he was never served with a notice as required by the bylaws, the time period, which begins to run with receipt of such a notice, has not run and this proceeding remains timely.

Downstate points to section 7.1 of the UUP agreement which states that the grievance procedure therein is the "sole" method of resolving grievances. Under section 7.2 of that agreement, a "grievance" includes "a dispute concerning the interpretation, application or claimed violation of a * * * provision of this Agreement". Concededly, the forced resignation of petitioner involves a provision of the UUP agreement. However, another provision of that agreement, section 7.9, provides that the grievance procedure under article 7 of that agreement "shall not apply to any matter which relates to College by-laws * * * developed by professional staff at a College for the conduct of the affairs of the College". The aforesaid bylaws of the Downstate Medical and Dental Staff are precisely such a set of bylaws (see, 10 NYCRR part 405; *Matter of Murphy v St. Agnes Hosp., supra*). The bylaws displace the grievance procedure of the UUP agreement if the issues "relate" to these provisions.

The bylaws provide that a practitioner is entitled to a hearing and review pursuant to section 10 of article 3 of the Downstate bylaws where his faculty appointment has been canceled or his clinical privileges have been reduced or suspended. Said provision states that "A practitioner shall have the right to a hearing and appellate review when he receives a recommendation of the Executive Committee that, if ratified by the President of Downstate Medical Center, will result in any" such action. It cannot be said that petitioner is precluded from invoking that procedure because he received no adverse recommendation prior to the actions adverse to his appointment and privileges. Section 8 of article 3 of the bylaws provides for this hearing procedure in all cases of suspension of clinical privileges, and further provides that a loss of a faculty appointment "will result in immediate suspension of clinical privileges". In addition, such an argument, if accepted, would allow anyone to deprive a practitioner of his right to review simply by disregarding the notice requirements of the section. This interpretation would be offensive to concepts of fairness and due process.

Hence, the hearing procedure in the bylaws is applicable and displaces the UUP grievance procedure. That part of

Special Term's determination which remitted the resignation issue to respondents for review under the UUP procedure is vacated and the parties are directed to proceed with the hearing and appellate review procedure under section 10 of article 3 of Downstate's bylaws. The respondents associated with KCHC shall be entitled to appear and present their positions at this forum and the resulting determinations of this procedure shall be binding on all parties herein.

The issues regarding Dr. Cottrell's handling of the formation of the Alternate Route Committee and the application to promote petitioner to full professor are fully governed by the UUP grievance procedure. Those issues relate to a claimed failure to follow the procedural steps relating to promotions set forth in the policies of the Board of Trustees and hence are a "grievance". Unlike the resignation issue, the promotion issue does not relate to any provision of the Medical Staff's bylaws, so the bylaw procedures do not displace those of the UUP agreement. Petitioner failed to seek relief with respect to the promotion issue within the 45-day time limit in that agreement. Therefore, since he failed to exhaust the proper administrative remedy, the courts are precluded from granting him relief. Mangano, J. P., Brown, O'Connor and Weinstein, JJ., concur.