Saeeda A. MAHMUD, M.D., Plaintiff,

v.

BON SECOURS CHARITY HEALTH SYSTEM d/b/a Bon Secours Community Hospital, Walter Kaufmann, Jeff Auerbach, Jane Brooks and David Brody, Individually, Jointly and Severally, Defendants.

No. 03 CIV. 1074(WCC).

United States District Court, S.D. New York.

Oct. 31, 2003.

Cotz & Cotz, Mahwah, NJ (George J. Cotz, of Counsel), for plaintiff.

Adelman, Sheff & Smith, LLC, Rockville, MD (S. Allan Adelman, of Counsel), Levett Rockwood P.C., Westport, CT (Stephen M. Cowherd, of Counsel), for Defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff, Saeeda A. Mahmud, M.D., brings this action against defendants, Bon Secours Charity Health System d/b/a Bon Secours Community Hospital (the "Hospital"), Walter Kaufmann, Jeff Auerbach, Jane Brooks and David Brody[1] arising from and relating to her former medical staff membership at the Hospital.[2] Plaintiff alleges that defendants were racially motivated in failing to renew her contract of affiliation and thwarting plaintiff's efforts to contract with other medical facilities, in violation of 42 U.S.C. § 1981 and N.Y. EXEC. LAW § 290 et seq. Plaintiff also asserts common law claims for interference with prospective economic advantage and slander. Finally, plaintiff asserts an antitrust claim under the Sherman Act, 15 U.S.C. § 1 et seq. Defendants move to dismiss plaintiff's Complaint pursuant to FED. R. CIV. P. 12(b)(6) based on plaintiff's failure to file her claim initially with the Public Health Council ("PHC") pursuant to N.Y. PUB. HEALTH LAW § 2801–b, as well as plaintiff's failure to state a claim for which relief may be granted.[3]

---

1. The four individual defendants are physician members of the Hospital's medical staff and hold various medical staff leadership positions. (Complt.¶ 18.)

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337 and 1367.

3. In support of their Motion to Dismiss, defendants also contend that the Complaint must be dismissed on substantive grounds because: (1) the possible loss of future business opportunities is not actionable contractual interference under 42 U.S.C. § 1981; (2) plaintiff's New York human rights claim under N.Y. EXEC. LAW § 290 et seq. fails because

We conclude that: (1) with the exception of her slander claim, plaintiff was required to file her claim initially with the PHC; and (2) plaintiff's slander claim fails to state a claim for which relief can be granted. Accordingly, we grant defendants' Motion to Dismiss the Complaint in its entirety, with leave to amend.

## BACKGROUND

The following statement of facts is based on the allegations in plaintiff's Complaint, which, for the purpose of deciding this motion, we assume to be true.[4] Plaintiff is a native of Pakistan and is of Islamic background. She is board eligible in cardiology, and is board certified in internal medicine. (Complt.¶¶ 8, 9.) In or about 1996, plaintiff was persuaded to relocate to the Port Jervis, New York area from New York City, and to take over the practice of Dr. Kruluwitz, a pulmonologist, who was retiring. In considering this move, plaintiff met with Dr. Bluett, who was then the Medical Director of the Hospital. In speaking to plaintiff, Dr. Bluett held himself out as a representative of the Hospital and plaintiff took his representation to be on behalf of the Hospital. Dr. Kruluwitz

had sold his practice to the Hospital, and the Hospital was selling it for him. (*Id.* ¶ 10.)

At that time, defendant Kaufmann was the only cardiologist in the Port Jervis area. Drs. Bluett and Kruluwitz encouraged plaintiff to believe that there was a need for another cardiologist in the area. (*Id.* ¶ 11.) Plaintiff discussed the need for cardiologists with Dr. Bluett, who assured plaintiff that there was such a need in the vicinity of Port Jervis, and that her move would be beneficial to all concerned. He cautioned her, however, that Kaufmann had a monopoly on all cardiac tests administered at the Hospital. (*Id.* ¶ 12.)

Thereafter, plaintiff purchased her practice from the Hospital for $40,000. As an inducement to buy the practice, Dr. Bluett promised to her office space directly across from the Hospital. Plaintiff claims that she relied on these promises and representations and gave up other opportunities for a cardiology practice in New York City. According to plaintiff, the individual defendants have *de facto* control of the Hospital through their mutually consensual rotation of positions such as: Chief of Staff, Medical Director and Chief of Medi-

she did not allege facts establishing the requisite employment relationship; (3) plaintiff's tortious interference with prospective business claim fails because she did not demonstrate defendants' interference with an existing business relationship between plaintiff and a specific, identifiable third party; (4) plaintiff's slander claim fails to allege who made the statements, when they were made and to whom they were made; (5) plaintiff lacks standing to bring a private federal or state antitrust action because she does not allege adequate antitrust injury in the form of damages to the competitive market; (6) defendants lack the capacity to conspire with each other to violate the Sherman Act; and (7) the medical profession is exempt from liability under New York state antitrust law. (Defs. Mem. Supp. Mot. Dismiss at 8–9, 11, 13–14, 25.) We dismiss plaintiff's Complaint in its entirety as a result of: (1) her failure to

file her claim initially with the PHC pursuant to N.Y. PUB. HEALTH LAW § 2801–b; and (2) her failure to allege who made the slanderous statements, when they were made and to whom. Accordingly, we need not reach defendants' other contentions.

4. On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the court must accept all of the well pleaded facts as true and consider those facts in the light most favorable to plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir.1993); *In re AES Corp. Sec. Litig.*, 825 F.Supp. 578, 583 (S.D.N.Y.1993) (Conner, J.).

cine, in addition to chairing the Credentials, Medical Examinations and Quality Assurance Committees. (*Id.* ¶ 18.) The individual defendants control a majority of the other physicians who can vote on such matters because of their ability to influence or control the allocation of admitting and consulting privileges at the Hospital, in addition to their use of referrals.

Prior to June 2001, plaintiff was often critical of the Hospital's management, and the level and quality of care provided by Bon Secours and by various doctors on staff at the Hospital. Plaintiff often wrote the Hospital through appropriate channels to express her concerns, without result. She then resorted to charting her comments about inadequate care, and the Hospital administration and her peers criticized her for doing so. (*Id.* ¶¶ 19–21.)

Thereafter, in the Spring of 2001, the Joint Accreditation Hospital Commission ("JAHCO") was evaluating the Hospital for purposes of Medicare supervision and evaluation of its care. (*Id.* ¶ 21.) Plaintiff made an appointment to meet with JAHCO in order to voice her concerns about the level and quality of care provided by the Hospital. Prior to her appointment, plaintiff was approached by certain employees and administrators of the hospital, who warned her not to go forward with her criticisms. She was told "we can do a lot to you [if you complain]" and "it will not be good for you [if you complain]." (*Id.* ¶ 22 (alterations in original).) Frightened by these remarks, plaintiff cancelled her meeting with JAHCO. (*Id.*)

Thereafter, and particularly after September 2001, plaintiff became the target of frequent racist remarks by the Hospital's employees and medical staff, including epithets like "foreigner," "dirty foreigner"

and "bomber." Although plaintiff complained to Thomas Brunelle, who was then the Executive Vice President and the day-to-day Chief Operating Officer of the Hospital, no steps were taken to halt this alleged abuse, and it continued so long as plaintiff was regularly in the Hospital. (*Id.* ¶ 23.) On September 1, 2001, plaintiff received a letter on Hospital letterhead from an entity identified as the "Ad Hoc Committee" [5] (the "Committee"). In the letter, the Committee claimed that plaintiff's conduct was erratic and suspect, and it demanded that plaintiff submit to physical and mental examinations. The Committee also advised her that the Hospital, acting through the Committee, had initiated a review of the charts of plaintiff's patients. (*Id.* ¶ 24.) Subsequently, plaintiff was advised that this chart review found her care to be substandard. Plaintiff obtained her own peer review of the same charts, which concluded that her care in those cases had been appropriate. (*Id.* ¶ 28.) Defendants, acting through the Committee, allegedly forced plaintiff to submit to a psychiatric evaluation, which concluded that she did not suffer from any condition that would preclude her from practicing medicine. (*Id.* ¶ 29.) Defendants also allegedly forced plaintiff to take a medical leave of absence from the Hospital by threatening to initiate charges that would lead to revocation of her medical license. Plaintiff acquiesced and asked for the leave. (*Id.* ¶ 10.)

As a result of defendants' complaints, the Committee on Physicians' Health of the New York Medical Society ("CPH") scrutinized plaintiff's conduct. The CPH works closely with the licensing authority, the Office of Professional Discipline

---

**5.** The Committee consisted of the individual defendants and several other doctors allegedly under their control. (*Id.* ¶ 25.)

("OPD"), and it deals with doctors who suffer from, inter alia, psychiatric problems and drug addictions. The CPH found no basis for taking any action against plaintiff. (*Id.* ¶ 31.)

Plaintiff's contract of affiliation with the Hospital was due for renewal in July 2001. Plaintiff, however, failed to file a renewal application in a timely manner.[6] According to plaintiff, it is usual and customary to accept such renewals out of time, as they generally are *pro forma.* Defendants, however, repeatedly reminded her of N.Y. PUB. HEALTH LAW § 2803, which requires a hospital that declines to renew a physician's privileges because of health or competency issues to report that physician to the OPD.[7] (*Id.* ¶ 32.)

Plaintiff is a tenant in a building owned by the Hospital. Her lease expired in November 2002, and the Hospital has refused to renew it. Plaintiff failed to vacate her rental premises and the Hospital has initiated an action for possession in Port Jervis City Court. (*Id.* ¶ 34.) Over the latter part of 2002, plaintiff applied for affiliation with St. Anthony's Hospital in Warwick, New York and Orange Regional Medical Center in Middletown, New York. Both medical facilities have refused to consider plaintiff for affiliation.[8] (*Id.* ¶¶ 36, 37.)

## DISCUSSION

### I. *Standard of Review*

On a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the court must accept as true all of the well pleaded facts and consider those facts in the light most favorable to the plaintiff. *See Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Hertz Corp.,* 1 F.3d at 125; *In re AES Corp.,* 825 F.Supp. at 583. On such a motion, the issue is "whether the claimant is entitled to offer evidence to support the claims." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Padavan v. United States,* 82 F.3d 23, 26 (2d Cir.1996) (quoting *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980)). Generally, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.34[1][b] (3d ed.1997); *see also Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1088 (2d Cir.1995). Allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, are insufficient as a matter of law. *See Martin v. N.Y. State Dep't of Mental Hygiene,* 588 F.2d 371, 372 (2d Cir.1978).

In assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference; *see* FED. R. CIV. P. 10(c); *De Jesus v. Sears, Roebuck & Co., Inc.,* 87

---

**6.** Plaintiff claims that she overlooked the renewal because of the building antagonism that resulted from her criticism of the hospital. (*Id.* ¶ 32.)

**7.** Plaintiff maintains that the Hospital failed and refused to make a new contract with plaintiff after her position expired in July 2001, "from an illegal mixture of racial and religious bias, coupled with a plan to limit competition." (*Id.* ¶ 33.)

**8.** Plaintiff claims that all or some of the defendants gave incorrect or unsubstantiated information to St. Anthony's and Orange Regional Medical Center, undermining her efforts to enter into contracts with them. (*Id.* ¶ 37.)

F.3d 65, 69 (2d Cir.1996), and documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46–48 (2d Cir.1991); *Lee v. State of New York Dep't of Corr. Servs.*, No. 97 Civ. 7112, 1999 WL 673339, at *2 n. 4 (S.D.N.Y. Aug. 30, 1999); *see United States Fidelity & Guaranty Co. v. Petroleo Brasileiro S.A.-Petrobas*, No. 98 Civ. 3099, 2001 WL 300735, at *2 (S.D.N.Y. Mar.27, 2001) ("the Court can consider documents referenced in the complaint and documents that are in the plaintiffs' possession or that the plaintiffs knew of and relied on in their suit.").

## II. *N.Y. Pub. Health Law § 2801–b*

■ Defendants argue that plaintiff's Complaint must be dismissed in its entirety because, as plaintiff concedes, she failed to file her claim initially with the PHC pursuant to N.Y. PUB. HEALTH LAW § 2801–b. In response, plaintiff acknowledges that she cannot obtain reinstatement of her privileges as relief in this proceeding because of that omission, but she contends that the exhaustion requirement applies only to actions to compel reinstatement of privileges, and not to actions wherein the plaintiff seeks damages for a wrongful failure to renew a grant privilege. (Pl. Mem. Opp. Mot. Dismiss at 1.) Plaintiff further claims that her failure to exhaust her remedies before the PHC should not bar her remaining claims arising from defendants' nonrenewal. (*Id.*) We agree with defendants and conclude that plaintiff's Complaint, with the exception of the slander claim, must be dismissed as a result of her failure to file a claim with the PHC initially.

■ Under New York law, a hospital may terminate a physician's privileges only "for reasons limited to patient welfare, institutional objectives, and character or competency of the physician." *Fried v. Straussman*, 41 N.Y.2d 376, 377, 361 N.E.2d 984, 393 N.Y.S.2d 334 (1977) (citing N.Y. PUB. HEALTH LAW § 2801–b).[9] The statutory procedure by which a physician may challenge a termination of hospital privileges generally is a two-step process, the first step of which requires the physician to file a complaint with the PHC for review. *See* N.Y. PUB. HEALTH LAW § 2801–b(2).[10] Once the physician files a complaint with the PHC, he or she may proceed to the second step of seeking redress in the courts, regardless of the result of the PHC inquiry.[11] *See, e.g., Johnson v.*

9. N.Y. PUB. HEALTH LAW § 2801–b(1) provides:

It shall be an improper practice for the governing body of a hospital to refuse to act upon an application for staff membership or professional privileges, or to deny or withhold from a physician ... staff membership or professional privileges in a hospital, or to exclude or expel a physician ... from staff membership in a hospital or curtail, terminate or diminish in any way a physician's ... professional privileges in a hospital, without stating the reasons therefor, or if the reasons stated are unrelated to standards of patient care, patient welfare, the objectives of the institution or the character or competency of the applicant....

10. N.Y. PUB. HEALTH LAW § 2801–b(2) provides:

Any person claiming to be aggrieved by an improper practice as defined in this section may, by himself or his attorney, make, sign and file with the public health council a verified complaint in writing which shall state the name and address of the hospital whose governing body is alleged to have committed the improper practice complained of and which shall set forth the particulars thereof and contain such other information as may be required by the council.

11. In a subsequent court proceeding, the PHC's findings are "entitled to prima facie effect ... in sensible recognition of the PHC's special competence over medical care issues." *Gelbard v. Genesee Hosp.*, 87 N.Y.2d 691, 697, 664 N.E.2d 1240, 642 N.Y.S.2d 178 (1996)

*Nyack Hosp.,* 964 F.2d 116, 121 (2d Cir. 1992) (citing *Guibor v. Manhattan Eye, Ear and Throat Hosp., Inc.,* 46 N.Y.2d 736, 738, 386 N.E.2d 247, 413 N.Y.S.2d 638 (1978)). This requirement is intended to take advantage of the "PHC's . . . peculiar expertise to assess whether a hospital had a sound medical reason for terminating a physician's privileges," *Johnson,* 964 F.2d at 121, as well as the PHC's "vital mediation role . . . in providing 'a professional competent forum in which to resolve' disputes at an early stage." *Gelbard,* 87 N.Y.2d at 697, 642 N.Y.S.2d 178, 664 N.E.2d 1240. This filing requirement applies equally in cases wherein the physician seeks damages in addition to injunctive relief. *See, e.g., Rose v. Taddonio,* 934 F.Supp. 593, 595 (S.D.N.Y.1996). Indeed, "a court must dismiss any suit brought by a physician seeking reinstatement of his privileges if the physician has not exhausted his remedies before the PHC." [12] *Johnson,* 964 F.2d at 121; *accord Gelbard,* 87 N.Y.2d at 698, 642 N.Y.S.2d 178, 664 N.E.2d 1240 ("Only upon completion of the PHC review may the physician proceed to the second step, which is to commence an action under [N.Y. Pub. Health Law § ] 2801–c to enjoin the hospital from improperly denying or terminating staff privileges.").

■ The primary jurisdiction rule, *see supra* note 12, requiring that a physician whose privileges have been denied or terminated file an initial complaint with the PHC is subject to several narrow exceptions. The first exception is that the physician does not have to file a complaint with the PHC in cases wherein the physician's privileges have been terminated for reasons that do not pertain to medical care, and therefore do not invoke "the particular expertise of the PHC." *Tassy v. Brunswick Hosp. Ctr.,* 296 F.3d 65, 70–71 (2d Cir.2002) (holding that a plaintiff physician alleging race and national origin discrimination was not required to pursue his claims initially with the PHC because the hospital's basis for revoking his privileges was sexual harassment allegations, and not patient care deficiencies).

■ The second exception to the § 2801–b primary jurisdiction rule applies when: (1) the plaintiff seeks damages, but *not* reinstatement; *and* (2) the presence or absence of a proper medical reason for terminating the plaintiff's privileges is *not* dispositive of the plaintiff's claims. For example, in *Johnson,* the plaintiff physician did not seek reinstatement, but did seek damages under the Sherman Act after the defendants revoked the plaintiff's privileges upon determining that his surgical performance was dangerously deficient. 964 F.2d at 118. The Second Circuit concluded that:

> Whether defendants had a proper medical reason for terminating [the plaintiff's] surgical privileges will be dispositive of [his] antitrust claims. Defendants supervise providers of medical

(citation omitted) (discussing N.Y. Pub. Health Law § 2801–b).

12. The broad "exhaustion" requirement of N.Y. Pub. Health Law § 2801–b is not the conventional exhaustion doctrine, wherein a "claim is cognizable in the first instance by an administrative agency *alone*. . . . In such cases, courts will not pass on the factual and legal issues in the case until completion of the administrative process." *Johnson,* 964 F.2d at 122 (citations and internal quotation marks

omitted). Rather, the "applicable principle" in such cases is the doctrine of primary jurisdiction, which "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Id.* (citations and internal quotation marks omitted).

care. In this role, defendants may take whatever steps are necessary to ensure that patients receive quality treatment. This includes the revocation of privileges of a health care professional whose services are regarded as inadequate or incompetent. Although revocation of a doctor's privileges may, perforce, eliminate competition by decreasing the number of doctors in a given specialty, this alone will not give rise to an antitrust violation. *Cf. Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir.1979) (company may protect its market position by normal competitive methods), *cert. denied*, 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980). Thus, [the plaintiff] cannot prevail on his antitrust claim if defendants had legitimate medical reasons to terminate his surgical privileges at [the hospital].

*Id.* at 121. Thus, this exception to PHC review is particularly applicable in actions wherein the gravamen of the physician's complaint is not that the privileges were revoked for an improper reason, but rather that the defendant hospital breached a contract with the physician by failing to follow its relevant bylaws. *See Wasserman v. Maimonides Med. Ctr.*, 268 A.D.2d 425, 425, 702 N.Y.S.2d 88 (2d Dep't 2000) (excusing failure to seek PHC review in breach of contract case when plaintiff did not seek reinstatement and did not allege improper reason for revocation); *Murphy v. St. Agnes Hosp.*, 107 A.D.2d 685, 688–89, 484 N.Y.S.2d 40 (2d Dep't 1985) (concluding that physician's challenge to his suspension based on hospital's failure to com-

ply with notice and hearing provisions of its bylaws was not within "scope of administrative review envisaged by [§ 2801–b]").[13] This exception is applied narrowly, however, and the pleading of multiple causes of action beyond improper termination of privileges will not allow a plaintiff to avoid threshold PHC review. As stated by the New York Court of Appeals:

> Even though plaintiff in this case asserts a claim for breach of contract, the fact that he seeks injunctive relief to restore his staff privileges places him squarely within the intended scope of the statute. Were plaintiff permitted to bypass threshold PHC review simply by asserting a breach of contract claim, the carefully calibrated statutory progression within section 2801–b, with its insistence on PHC review before a court can order the restoration of staff privileges, would be undermined .... *The statutory requirement of threshold PHC review is too important to be circumvented by artful pleading.*

*Gelbard*, 87 N.Y.2d at 697, 642 N.Y.S.2d 178, 664 N.E.2d 1240 (citation omitted, emphasis added); *see also Purgess v. Sharrock*, No. 89 Civ. 8096, 1990 WL 104024, at *1 (S.D.N.Y. July 18, 1990) (rejecting plaintiff's claim that § 2801–b did not apply when he included antitrust, civil RICO, due process, equal protection, defamation, emotional distress and state law claims in his complaint); *Matter of Libby*, 163 A.D.2d 388, 388, 558 N.Y.S.2d 116 (2d Dep't 1990) (dismissing petition because it was "not limited to allegations that the hospital has failed to comply with its by-

---

**13.** Accordingly, plaintiff's reliance on *Murphy* and *Giannelli v. St. Vincent's Hosp. & Med. Ctr.*, 160 A.D.2d 227, 231, 553 N.Y.S.2d 677 (1st Dep't 1990), is misplaced because those decisions are inapposite. *Murphy* was not an attack on the propriety of the reasons for the physician's suspension, but rather was grounded in the defendants' failure to follow procedures set forth in relevant hospital bylaws. 107 A.D.2d at 688–89, 484 N.Y.S.2d 40. Moreover, *Giannelli* is of little guidance in the instant case because in that case, the Appellate Division, First Department did not address any claims or defenses arising from N.Y. PUB. HEALTH LAW § 2801–b.

laws but alleges matters properly falling within the scope of administrative review" by PHC).

Plaintiff concedes that she did not file a complaint with the PHC as is required by N.Y. PUB. HEALTH LAW § 2801–b, and therefore, that she cannot obtain reinstatement of her privileges as relief in this proceeding. (Pl. Mem. Opp. Mot. Dismiss at 1.) Our review of the remainder of her Complaint, however, indicates that the majority of her claims for damages raise significant patient care issues that more properly would have been brought to the PHC initially. To reiterate, in the instant case, plaintiff states, as the factual predicates for her various causes of action, that defendants had claimed that her patient care was deficient, and that they had referred her for physical and mental examinations in order to determine whether she was fit to practice medicine. (Complt.¶¶ 24–27, 31.) She also states that she had obtained her own peer review of her patient care charts and that CPH found her fit to practice medicine. (*Id.* ¶¶ 28, 30–31.) Her Complaint also alleges that defendants gave "incorrect and unsubstantiated information" to St. Anthony's Hospital and Orange Regional Medical Center. (*Id.* ¶ 37.)

These factual allegations, and particularly those concerning deficient patient care, are the very type of medically-based claims that demand initial review by the PHC, which is in a far superior position to assess their merit than this Court. Thus, we dismiss her state and federal antitrust claims (*id.* ¶¶ 49–55) because a resolution of the question whether defendants had a proper medical reason for refusing to renew plaintiff's privileges will be dispositive of those claims. *See Johnson,* 964 F.2d at 121. The existence of a proper medical reason may also be determinative of plaintiff's claim alleging malicious interference

with prospective economic advantage. *See, e.g., Goldberg v. Bell Atlantic,* 304 A.D.2d 789, 790, 761 N.Y.S.2d 481 (2d Dep't 2003) ("To establish a claim for intentional interference with prospective economic advantage, a plaintiff must demonstrate that the alleged interferer used unlawful or improper means or that the interference by lawful means constituted the infliction of *intentional harm done without excuse or justification.*" (emphasis added, internal quotation marks omitted)). (Complt.¶ 45.) Medical conclusions reached on the PHC review may be similarly determinative of plaintiff's federal and state civil rights claims that defendants discriminated against plaintiff. (*Id.* ¶¶ 39–44.) *See, e.g., Perez Rivera v. Hertz Corp.,* 990 F.Supp. 234, 236–37 (S.D.N.Y. 1997) ("To establish a claim under section 1981 or the NYHRL, plaintiffs must prove that (1) they are members of a racial minority, (2) the defendant intended to discriminate on the basis of race, and (3) the discrimination concerned one or more of the activities enumerated in the statute, which include making and enforcing contracts.... With regard to the intent element, plaintiff must show that defendant's actions were purposefully discriminatory and racially motivated." (citation omitted)); *Vakharia v. Swedish Covenant Hosp.,* 765 F.Supp. 461, 471–72 (N.D.Ill.1991) (concluding that physician stated § 1981 claim against hospital for third-party interference with her ability to make contracts with prospective patients).

We do conclude, however, that determination of whether the statements complained of in plaintiff's slander claim, namely that defendants told "various people that she is 'crazy,' 'insane,' and/or 'has serious mental problems,'" (Complt.¶ 47) are in fact slanderous is not an inquiry that requires initial PHC review. They do not impugn directly plaintiff's professional

or technical competence as a physician. Accordingly, adjudication of these claims does not require any specialized knowledge beyond the ordinary ken of this Court. *Cf. Tassy*, 296 F.3d at 70–71 (concluding that PHC review was unnecessary when privileges were revoked because of alleged sexual harassment by physician). PHC review is, therefore, not necessary for the plaintiff's slander claim.

Accordingly, we dismiss all claims in plaintiff's Complaint, with the exception of the slander claim, because they are within the purview of N.Y. PUB. HEALTH LAW § 2801–b and plaintiff admittedly did not file the required initial claim with the PHC. This dismissal, however, is with leave to renew after PHC review, regardless of the result of that review. *See, e.g., Gelbard*, 87 N.Y.2d at 698, 642 N.Y.S.2d 178, 664 N.E.2d 1240.

### III. *Plaintiff's Slander Claims*

 We now turn to defendants' contention that plaintiff's slander claim, which is the remaining count of the Complaint, fails to state a claim for which relief can be granted. (Defs. Mem. Supp. Mot. Dismiss at 12–14.) Specifically, defendants contend that plaintiff's slander claim must be dismissed because the Complaint did not allege who made the statements at issue, and when and to whom the statements were made. (*Id.* at 13–14.) Plaintiff responds by reiterating her claim that the statements, which alleged that defendants told people that she was "crazy," "insane" or "has serious mental problems," are slanderous per se, but she does not respond to defendants' argument with respect to the content of her pleading. (Pl. Mem. Opp. Mot. Dismiss at 3–4.) We agree with defendants, and we conclude that the remaining slander count in the Complaint must be dismissed because it fails to allege who made the allegedly slanderous statements, and when and to whom they were made.

"Whether statements are susceptible of a defamatory connotation is a threshold legal determination to be made by the court. . . ." A statement may be considered defamatory if, among other things, it tends to "expose [the plaintiff] to public hatred, shame . . . aversion, . . . disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons." . . . . *While a complaint need not contain the exact words that constitute slander, the plaintiffs must allege facts that provide "an adequate identification of the purported communication, and an indication of who made the communication, when it was made and to whom it was communicated."* . . .

*NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F.Supp.2d 134, 149 (S.D.N.Y. 2003) (citations omitted, emphasis added) (applying New York law to dismiss slander claims when plaintiff failed to identify when and to which particular persons allegedly slanderous statement was made by defendants).

The Complaint states, in relevant part: "Since Summer 2001, upon information and belief, some or all of the individual defendants have slandered Plaintiff by telling various people that she is 'crazy,' 'insane,' and/or 'has serious mental problems.'" (Complt.¶ 47.) This statement, therefore, fails to identify adequately who actually made the allegedly slanderous statements, when they were made and to whom they were communicated. As defendants point out correctly, this paucity of specific information handicaps their ability to investigate and present a defense. Accordingly, we conclude that plaintiff's slander claim must be dismissed for failure to state a claim for which relief can be granted.

## CONCLUSION

For all of the foregoing reasons, defendants' Motion to Dismiss the Complaint pursuant to FED. R. CIV. P 12(b)(6) is granted in its entirety, without prejudice. Plaintiff is granted leave to amend the Complaint to supply the missing allegations in her slander claim or to reassert her other claims after exhausting her remedies under N.Y. PUB. HEALTH LAW § 2801–b.

SO ORDERED.